## COMMONWEALTH *vs.* SOPHIA C. THOMPSON.

Suffolk. March 7, 1893. — May 16, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Counts of Indictment — Joinder of Offences — Examination of Jurors — Statute — Separation of Witnesses — Testimony of Physician — Opinion of Witness — Dying Declarations — Striking out Evidence with Excepting Party's Assent.*

Four counts, laying different means of procuring the miscarriage of a certain woman by reason of which she died, are properly joined in one indictment, and the provisions of Pub. Sts. c. 213, § 18, allowing the joinder of offences which could not be joined at common law, if it is averred that the different counts are different descriptions of the same act, have no application. These counts do not describe different offences in the sense of the statute, and could be joined at common law.

An allegation in an indictment for an attempt to procure the miscarriage of a certain woman, that the defendant did use " a certain instrument, the name of which, and a more particular description of which, are to said jurors unknown," is sufficient.

Under Pub. Sts. c. 170, § 35, the examination of jurors as to interest or bias beyond the inquiries provided for expressly by the statute, was left to the discretion of the presiding judge, which discretion is not taken away by St. 1887, c. 149, providing that the examination may be made by the parties or their attorneys under the direction of court; and the discretion is exercised wisely by not going beyond the usual questions, unless something appears which makes it proper to go further.

It is within the discretion of the presiding judge to refuse to separate the witnesses until they have testified.

A physician of eighteen years' practice, who attended a patient in her last illness, ordinarily may be asked, without further qualifying as an expert, what caused her death. In the case in question, the answer was that the death was caused by an abortion performed with instruments when the patient was advanced in pregnancy about five months, and the physician had previously testified that a week before the death she was delivered of a fœtus about five months advanced from conception, and that he was present and assisted at the delivery, and examined the patient before the delivery. *Held*, that the only element of opinion likely to be involved, beyond what an ordinary eyewitness might be supposed competent to express, was whether the injuries caused the death, and that the court could not say that the presiding judge erred in finding the witness sufficiently qualified.

On the trial of an indictment for an attempt to procure the miscarriage of a certain woman, by reason of which she died, her mother may testify as to certain changes in her daughter just before her decease, and that they indicated to her that the daughter was in a state of pregnancy.

If, on the trial of an indictment for an attempt to procure the miscarriage of a certain woman, an exception is saved to the testimony of the mother of the deceased as to the statements of the daughter that she was dying, and as to her dying declarations implicating the defendant, the former are admissible to show that the latter declarations were made under a sense of impending death. If believed to express the actual state of the dying woman's mind, the statements to the mother lay a sufficient foundation for the admission of the declarations, which are made admissible by statute; and if the presiding judge strikes out certain parts of these declarations not specially excepted to on the ground that they were not competent evidence, seemingly with the defendant's assent, the defendant has no cause of complaint.

HOLMES, J. 1. The defendant is indicted under Pub. Sts. c. 207, § 9, for an attempt to procure the miscarriage of a certain woman, by reason of which the woman died. There are four counts laying different means. These properly are joined in one indictment. The provisions of Pub. Sts. c. 213, § 18, allowing the joinder of offences which could not be joined at common law, if it is averred that the different counts are different descriptions of the same act, have no application. *Commonwealth* v. *Ismahl*, 134 Mass. 201, 202. These counts do not describe different offences in the sense of the statute, and could be joined at common law under Massachusetts practice. *Carlton* v. *Commonwealth*,

5 Met. 532. *Commonwealth* v. *Jacobs,* 152 Mass. 276, 281. *Commonwealth* v. *Follansbee,* 155 Mass. 274, 277. The first count alleges that the defendant did use "a certain instrument, the name of which and a more particular description of which are to said jurors unknown." This is sufficient. *Commonwealth* v. *Webster,* 5 Cush. 295, 322, 323. *Commonwealth* v. *Martin,* 125 Mass. 394. *Commonwealth* v. *Coy,* 157 Mass. 200. These are the only questions open on the motion to quash, as the defendant was acquitted on the last three counts.

2. The court put the usual questions to the jurors, on motion of the defendant, as to whether they had formed or expressed any opinion upon the subject matter to be tried, or were sensible of any bias or prejudice therein, as required by statute. The judge did not read the indictment, but stated that it alleged that an abortion was performed by the defendant upon one Charlotte S. Hopkins on a certain date. No reason is shown why the jurors should have been questioned further, and this being so the judge wisely used the discretion which still is left to him, and of which it would be unfortunate if he were deprived, by declining to allow the counsel to proceed with a general examination. *Commonwealth* v. *Poisson,* 157 Mass. 510. See also *Commonwealth* v. *Trefethen,* 157 Mass. 180.

3. The refusal to separate the witnesses until they had testified was within the discretion of the presiding justice. *Commonwealth* v. *Follansbee,* 155 Mass. 274, 277.

4. A physician of eighteen years' practice, who attends a patient in her last illness, ordinarily may be asked, without further qualifying as an expert, what caused her death. The answer to the foregoing question in this case was excepted to, as well as the question. The answer was that the death was caused by an abortion having been performed with instruments when the patient was advanced in pregnancy about five months. It is argued that this opinion required more scientific knowledge than the witness was shown to possess, in order to make it competent. The doctor previously had testified that a week before her death she was delivered of a fœtus about five months advanced from conception, so that his testimony meant an abortion performed very shortly before the death. He also testified that he was present and assisted at the delivery, and examined the

patient before the delivery.  The evidence plainly implies that the witness discovered physical laceration of some kind, such as was testified to in *People* v. *Sessions*, 58 Mich. 594, 598. The only element of opinion likely to be involved, beyond what an ordinary eyewitness may be supposed competent to express, is whether the injuries caused the death, and for that we cannot say that the judge might not find the witness sufficiently qualified.  See *Nunes* v. *Perry*, 113 Mass. 274, 276 ; *Commonwealth* v. *Sturtivant*, 117 Mass. 122.  See Wharton, Evidence, §§ 441, 512.

5. The mother of the deceased properly was allowed to testify to certain changes in her daughter, and that they indicated to her that her daughter was in the family way.  *Commonwealth* v. *O'Brien*, 134 Mass. 198, 200.  In *Boies* v. *McAllister*, 12 Maine, 308, where the opinion of deponents that a woman " had been in a state of pregnancy " was excluded, the witnesses seem to have been men, and probably had less exact means of forming a judgment than the mother naturally would have, and than this witness mentioned.  They were allowed to testify to the indications.  In the present case, the objection appears to have been directed not specially to the statement of opinion, but to the evidence generally.

6. If we are to take it that an exception was saved to the testimony of the mother of the deceased as to the statements of her daughter that she was dying, and as to her daughter's dying declarations, implicating the defendant, the former were admissible to show that the latter declarations were made under a sense of impending death.  *Commonwealth* v. *Cooper*, 5 Allen, 495, 497.  *Commonwealth* v. *Haney*, 127 Mass. 455.  *Commonwealth* v. *Trefethen*, 157 Mass. 180.  If believed to express the actual state of the dying woman's mind, they laid a sufficient foundation for the admission of the declarations.  The declarations are made admissible by statute.  St. 1889, c. 100.  *Commonwealth* v. *Homer*, 153 Mass. 343, 344.  The court struck out certain parts of these declarations not specially excepted to, on the ground that they were not competent evidence, seemingly with the defendant's assent.  With regard to this the defendant has no cause of complaint.  *Smith* v. *Whitman*, 6 Allen, 562. *Costello* v. *Crowell*, 133 Mass. 352, 354, 355.  *Anthony* v. *Travis*, 148 Mass. 53, 60.

7.  The exception to a refusal, that there was no case to go to the jury, depends on and falls with the earlier exceptions which we have dealt with.                          *Exceptions overruled.*

*J. W. Converse*, for the defendant.

*G. C. Travis*, First Assistant Attorney General, for the Commonwealth.