ANASTASIA HARDIMAN *vs.* FRANK Q. BROWN.

Suffolk.    November 15, 1894. — January 3, 1895.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Expert — Answer to Hypothetical Question.*

In an action for personal injuries occasioned to the plaintiff's intestate by being struck and run over by a horse with a sleigh attached, a post-mortem examination more than four years thereafter revealing tumors in the cerebellum, a good practising physician of long experience who knows what the authorities say in regard to tumors may properly be permitted to answer in the following manner a hypothetical question as to the exciting cause of the illness of the plaintiff's intestate, viz.: "From the result of the autopsy, knowing that there was a tumor of the brain, I presume that was the exciting cause of the troubles from which he suffered," although in his practice he had not been familiar with tumors on the brain and did not pretend to understand the cause of tumors.

A doctor of medicine may be competent to express an opinion upon the effect of pressure at the base of the brain, whether it arises from tumors or other causes, although he may never have been called to a case where tumors were known to exist there, and in determining the qualifications of a physician the extent of his reading in his profession may be considered as well as his experience.

TORT, for personal injuries occasioned to the plaintiff, on January 9, 1887, by being struck and run over by a runaway horse with a sleigh attached, driven by the defendant. The plaintiff having died, the action was prosecuted by her administrator. At the trial in the Superior Court, before *Maynard*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, the nature of which appears in the opinion.

*F. S. Hesseltine & N. F. Hesseltine*, for the defendant.

*J. F. Wiggin & B. M. Fernald*, for the plaintiff.

FIELD, C. J.    The question put to Dr. Clark called for an opinion upon "the exciting cause of the illness" from which the plaintiff suffered from January 9, 1887, till her death on May 18, 1892.    The nature of the illness was described in the question.*    The answer of Dr. Clark was: "From the result of the

---

* The question, which was based on the evidence in the case, was as follows: "Suppose a girl between seven or eight years of age, who had always been in good health, on the 9th of January, 1887, to have been run over by a runaway horse with sleigh attached, to have been knocked insensible to the ground, the horse and sleigh passing over her, inflicting three

autopsy, knowing that there was a tumor of the brain, I presume that was the exciting cause of the troubles from which she suffered." The exceptions recite that, when Dr. Clark was called as a witness, "the counsel for the defendant, upon being asked by the counsel for the plaintiff if he wanted him to qualify him, said, ' Not at all, — I admit Dr. Clark is a good physician ' ; and later said, ' You do not understand I admit he is an expert on tumors; I admit him to be a good practising physician, a graduate from a good institute, and of long experience.' " The exceptions also recite that, " before the hypothetical question was put to Dr. Clark, he was asked if he was familiar with tumors of the brain, to which he replied that he was not. He was then asked if he knew what caused tumors, to which he answered that he did not mean to be understood that he understood the causes of tumors; that he knew what the authorities said in regard to them; that the causes were chiefly unknown; to which question and answer no objection was made. The presiding justice ruled that the fact that he did not pretend to know anything about tumors, and the fact that there was a tumor there, did not preclude him from answering the hypothetical question, but ordered the following portion of his answer to be stricken out : ' As to what was the cause of the tumor, as I have said before, the causes are chiefly uncertain. Tumors are caused from injuries to the brain.' "

The counsel for the defendant contends that Dr. Clark was not shown to be qualified to answer as he did the hypothetical question put to him, and the question before us is whether it ap-

---

cuts, one upon the top, one upon the side, and one upon the back of her head, from the hoofs of the horse or otherwise; that she thereafter was attacked with vomiting, and was confined to the house for two months, suffering great pain in the back and front of the head; that at intervals thereafter, increasing in frequency and intensity till the date of her death on May 18, 1892, she was attacked with violent pains in the head, accompanied with vomiting ; that in the last few months of her life her sight gradually failed, and she became totally blind; that her legs became unsteady, and her control over them uncertain; that she suffered almost continuously great pain in the front and back of the head; that after her death, upon examination, it was found that she had one or more tumors of the cerebellum, or at the base of the brain. What, in your opinion, was the exciting cause of the illness from which she suffered from January 9, 1887, the date of the accident, till the date of her death, May 18, 1892 ? "

pears that the justice presiding at the trial erred, as matter of law, in finding on the evidence recited in the exceptions that Dr. Clark was qualified to give the answer he gave. *Quinsigamond Bank* v. *Hobbs,* 11 Gray, 250. *Perkins* v. *Stickney,* 132 Mass. 217. We think that a good practising physician of long experience, who knew what the authorities said in regard to tumors, could properly be permitted to answer the question as Dr. Clark did, although in his practice he had not been familiar with tumors on the brain, and did not pretend to understand the cause of tumors. Dr. Clark was not permitted to give any opinion upon the cause of the existence of the tumors at the base of the brain of the plaintiff, but only of their effect in producing the symptoms of disease which appeared in the plaintiff's case. A doctor of medicine may be competent to express an opinion upon the effect of pressure at the base of the brain, whether it arises from tumors or other causes, although he may never have been called to a case where tumors were known to exist there; and in determining the qualifications of a physician, the extent of his reading in his profession may be considered, as well as his experience. See *Finnegan* v. *Fall River Gas Works,* 159 Mass. 311.                                    *Exceptions overruled.*