## STATE v. KAMMEL.

Where specific objections are made to evidence below, other objections will not be considered on appeal, so that an objection to the admission of a physician's testimony as to the cause of a death, as not being upon witness' own knowledge or upon a hypothetical statement of facts, will not be considered on appeal, where that objection was not made below.

It will be assumed that members of a profession, after a reasonable time, have knowledge common to persons engaged therein, and a physician, who had received a medical education and had practiced for some eight years was competent to testify as an expert whether a death was caused by arsenic, though he had never had any cases of arsenic poisoning.

Where an expert testified as to the cause of decedent's death from the facts as stated by other witnesses, his testimony was not objectionable because he did not make any examination, and decedent had been dead some time before he saw the body.

A question to a physician as to the cause of decedent's death was not objectionable on the ground that it called for a conclusion.

.Where the state claimed that accused had poisoned his wife by placing arsenic in the oatmeal during the absesnce of herself and her son from the latter's home, where she lived, testimony that the day before decedent was poisoned witness saw a man on the road leading from the son's farm and near the fence separating his farm from accused's was admissible as tending to prove that some one was in the vicinity of the house occupied by decedent and her son during their absesnce, though he was not identified with accused.

In a prosecution of accused for poisoning his wife, a requested charge that the evidence was circumstantial, and accused was presumed innocent unitil the contrary appeared from the evidence, and, in order to convict, the circumstances must be so strong as to exclude every reasonable hypothesis except guilt, and, if facts could be explained upon any reasonable hypothesis consistent with innocence, the jury should acquit, and the state must not only show beyond a reasonable doubt that the facts were true, but must also show that they were incompatible with any reasonable hypothesis of innocence, and each fact essential to show guilt must be proven beyond a reasonable doubt, was sufficiently covered by the court's charge that, in order to convict, the circumstances must be so strong as to exclude every reasonable hypothesis except that of guilt, and, if the facts proven upon any reasonable hypothesis were consistent with innocence, the jury should acquit, which charge was subssquently repeated in substance.

The trial court need not instruct in the exact language of the request, though it be correct, but may use its own language.

(Opinion filed, June 26, 1909.)

Appeal from Circuit Court, Hand County. Hon. LYMAN T. BOUCHER, Judge.

.Gustave Kammel was convicted of manslaughter in the first degree, and he appeals. Affirmed.

*John Pusey and S. V. Ghrist,* for appellant.

Proof that a witness was a licensed physician, without evidence of actual experience or deliberate study of the subject, is insufficient to qualify him to testify as an expert on the subject of poisoning in a criminal prosecution. State v. Simons, 65 Pac. 595; Soquet v. State, 40 N. W. 391; People v. Thacker, 108 Mich. 652; Siebert v. People, 143 Ills. 571; Polk v. State, 36 Ark. 117; Hitchcock v. Burgett, 38 Mich. 501; Barns v. Barenfield, 84 Ind. 43. A witness cannot give an opinion on a subject for expert testimony without having shown himself an expert. Murphy v. Salt Lake City R. R. Co., 52 Pac. 596. A witness may be qualified to testify as an expert either by study without practice, or by practice without

study. Wheeler v. White Mfg. Co., 36 Atl. 772. It is error to refuse an instruction that admissions and confessions of guilt are to be received with great caution, and are not sufficient to convict unless supported by other evidence. Haynes v. State, 27 So. 601; People v. McArron, 121 Mich. 1.

*S. W. Clark, Atty. Gen., Cloyd D. Sterling, Asst. Atty. Gen., and Harlan J. Bushfield, State's Atty.,* for the State.

Where a witness states to the jury particular facts in the presence of an expert witness on which the expert is to state his opinion, and the latter follows the former while the facts are fresh in the minds of the jury, then it is not necessary to again state those facts to the expert witness, but he may base his opinion upon the particular facts that have already been shown. State v. Watson, 46 N. W. 868; Dwinell v. Abbott, 43 N. W. 496; Wright v. Hardy, 22 Wis. 348; Omaha & R. V. Ry. Co. v. Brady, 57 N. W. 769, Cornell v. State, 80 N. W. 745. It will be assumed in practical administration, that members of a profession, trade or calling, after a reasonable length of time, have the knowledge common to persons so engaged. 17 Cyc. 38; Hardiman v. Brown, 162 Mass. 585; Com. v. Thompson, 33 N. E. 1011; Mitchell v. State, 58 Ala. 417. Practicing physicians who are graduates of a medical college are competent to testify as experts on the subject of arsenical poi· soning, although it is not shown that they have had any experience in poisoning cases. Lowe v. State, 118 Wis. 641; Allen v. Voje, 114 Wis. 1; State v. Wood, 53 N. H. 484; Brown v. Marshall, 11 N. W. 392; Isenhour v. State, 157 Ind. 517; Siebert v. People, 143 Ill. 571. Judgment will not be reversed for the refusal of an instruction, if the court can see that the case was placed fully, fairly and properly before the jury by the instructions which were given, although the requests refused may have been correctly drawn in point of law and in their applications to the evidence. Thompson on Trials, Vol. 2, § 2352.

CORSON, J. Upon an information duly filed, by the state's attorney of Hand county, charging the defendant with the crime of murder, he was convicted of manslaughter in the first degree, and, from a judgment entered upon the verdict of the jury, he has appealed to this court.

It is charged in the information that the defendant on the 13th day of December, 1907, did kill and murder one Mary Kammel, by means of poison administered to her by him. It is disclosed by the evidence: That the defendant and the deceased were husband and wife, and for some months prior to the alleged homicide they had been separated; the deceased living with her son on his farm about a half mile distant from the farm on which the defendant resided. That, on the morning of the day that the deceased died, she and her son made their breakfast mainly of oatmeal. That, soon after breakfast, the deceased became very ill, and also the son, and some time in the afternoon the deceased expired. That the son, immediately upon finding himself and his mother so ill, went to the home of the defendant and informed him of the illness of the deceased; the son remaining at the home of the defendant, too ill to further attend to his mother. That the defendant, several hours later in the day, went to the village of Rockham and requested Dr. Seaman, who was a practicing physician in that village, to go and visit the deceased. That Dr. Seaman immediately started for the home of the deceased, three miles distant from Rockham; but upon arriving at the house, at about 3:30 p. m., he found the deceased dead. That he then prescribed for the son, who subsequently recovered. That the oatmeal remaining cooked and uncooked, found in the house of the son, was found, upon examination, to contain arsenic, and the contents of the stomach of the deceased, which had been removed, was, upon examination, also found to contain arsenic poison. That, the day preceding the death of the deceased, she and her son left their home and went to the town of Rockham, and were absent some hours. It was also further disclosed by the evidence that there had been much quarreling between the deceased and the defendant, resulting from her refusal to sign a deed, or join in the sale of the homestead, and that, as a result of their disagreement, divorce proceedings were pending, in which the deceased claimed quite a large sum as alimony.

It was the theory of the prosecution that, during the absence of the deceased and her son from home, on the day preceding her death, the defendant went to the house and placed poison in the

oatmeal, which the evidence tended to show caused the death of the deceased, and that the motive of the defendant in causing the death of the deceased was to prevent her from securing a divorce and obtaining a portion of his property as alimony, and also to secure the farm belonging to his son, who was at the time unmarried, and to which the defendant would succeed in the case of the death of his son, as his heir. On the trial, after Fred Kammel, the son, had testified as to the eating of the oatmeal at breakfast by the deceased and himself, and the illness of the deceased and himself, with the symptoms attending the same, and the evidence of Prof. Whitehead in regard to the finding of arsenic in the oatmeal, cooked and uncooked, and in the contents of the stomach of the deceased, Dr. Seamon was called a second time as a witness on the part of the state, and was asked the following questions: "Q. Dr. Seamon, did you hear the testimony today of Fred Kammel? A. Yes, sir. Q. In regard to the death of his mother? A. Yes, sir. Q. And the question of Mr. Whitehead in regard to his examination of the contents of the stomach received by him? A. Yes, sir. Q. I will ask you now, Doctor, after hearing this evidence of the death of Mary Kammel and the symptoms held by her shortly prior to her death and after eating the oatmeal, which was testified to, what was the cause of her death?" To this question the defendant's counsel objected for the reason that the witness had not shown himself competent to testify as an expert, and for the further reason that the oatmeal referred to had not in any manner been properly identified as the oatmeal she partook of, and for the further reason that the witness had testified that the deceased had been dead for some time before he went to where the body was, and that he did not make any examination at all, and for the further reason that it calls for a conclusion, which objection was overruled, and defendant excepted. The witness, in reply to the question, testified: "I should say it was arsenic poisoning."

It is contended by the appellant that, in permitting the witness to answer the above question, the court committed error, for the reason that it was calling upon the witness to express an opinion from the testimony of other witnesses, and that the witness neither testified from his own knowledge, nor from the state of facts

stated in a hypothetical question. It will be observed that, in the objections of Dr. Seamon, no objection was made upon this ground at the trial, and hence is not properly before us for review. The counsel, having made specific objections to the introduction of the evidence in the court below, is confined to the objections specified, and therefore we do not deem it necessary at this time to express any opinion as to the admissibility of such testimony, when not elicited from the expert by a hypothetical question.

It is also contended that Dr. Seamon had not shown himself qualified as an expert, and therefore his evidence was inadmissible. He testified that he had been a practicing physician for some eight years, the last four years of which he had practiced in the town of Rockham; and, while it is true that he testified that he had no practical experience in cases of arsenic poisoning, still the fact that he had received a medical education, and had given the subject the consideration that would usually be given by a physician, he was clearly competent to give an opinion as to the cause of the death of the deceased. In 17 Cyc. 38, the law applicable to this class of cases is thus stated: "It will be assumed in practical administration that members of the profession, trade, or calling, after a reasonable length of time, have the knowledge common to persons so engaged." In Siebert v. People, 143 Ill. 571, 32 N. E. 431, the learned Supreme Court of that state held: "A licensed practicing physician, who is shown to be a graduate of a regular medical college, and to have practiced his profession for many years, is competent to give his opinion, upon a hypothetical question setting forth the symptoms of a person immediately prior to his death, whether the death was from the effects of arsenical poison, although he may not be shown to have had any case of such poisoning. A medical witness, in giving his opinion as an expert, is not confined to opinions derived from his own observation and experience, but may give an opinion based upon information derived from medical books." The court's opinion in that case is exhaustive, and reviews the numerous cases bearing upon that question, and arrives at the conclusion indicated by the headnote above quoted. While there is some conflict in the authorities upon this subject the ruling of the court in the case at bar is, in our opinion, supported by the

weight of authority.   People v. Thacker, 108 Mich. 652, 66 N. W. 563; Anastasia Hardiman v. Frank Q. Brown, 162 Mass. 585, 39 N. E. 192; Com. v. Thompson, 159 Mass. 56, 33 N. E: 1111; Mitchell v. State, 58 Ala. 417; Lowe v. State, 118 Wis. 641, 96 N. W. 417; Allen v. Voje, 114 Wis. 1, 89 N. W. 924; State v. Wood, 53 N. H. 484; Brown v. Marshall, 47 Mich. 576, 11 N. W. 392; Isenhour v. State, 157 Ind. 517, 62 N. E. 40.

It is also contended by the appellant that the cooked and uncooked oatmeal and the stomach of the deceased, which it is claimed was sent to Prof. Whitehead at Brookings for examination, were not sufficiently identified; but we are of the opinion that there is no merit in this contention.   It was clearly shown by the evidence that the identical oatmeal, cooked and uncooked, found in the pantry of the deceased, was forwarded to Prof. Whitehead.   The other objections were not of sufficient merit to require a special discussion.   The contention of the appellant that the court erred in admitting the testimony of Prof. Whitehead as to the chemical examination of the cooked and uncooked oatmeal and the stomach of the deceased, for the reason that the same was not sufficiently identified, is clearly untenable for reasons above stated.

It is also contended by the appellant that the court erred in overruling the defendant's motion to strike out the testimony of the witnesses James Palmer and William Erb.   These witnesses had testified that on December 12th they were on the defendant's farm trapping, between the hours of 10 and 11 a. m., while the deceased and her son were away from home.   Mr. Erb testified he saw a man coming south on the private road from Fred Kammel's place and saw that it was not his partner, Palmer, and Mr. Palmer testified that about the same time he saw a man on the west side of the fence, separating the two farms of the defendant and his son, and that, when he reached the place opposite the place where the man was, he saw tracks across the ice of the creek, running across the two farms.   The witnesses did not pretend to identify the man they saw as the defendant; but we are of the opinion that the evidence was clearly admissible as tending to prove that there was a person in the vicinity of the house occupied by the deceased and

her son during their absence. The evidence may not have been very important; but it was proper to be shown to the jury.

It is further contended by the appellant that the court erred in its refusal to give the defendant's requested instruction to the jury which is as follows: "This is a case where the state seeks a conviction on circumstantial evidence. The defendant is presumed to be innocent until the contrary appears from the evidence; and, in order to convict, the circumstances must be so strong as to exclude every reasonable hypothesis except the guilt of the defendant. If the facts proven in this case can be explained upon any reasonable hypothesis consistent with the innocence of the defendant, you will then return a verdict of not guilty. And you are further instructed that the state in this case must not only show beyond a reasonable doubt that the alleged facts and circumstances are true, but that they are absolutely incompatible with any reasonable hypothesis of the innocence of the accused, and that each fact necessary to establish the guilt of the accused must be proven by the evidence submitted to you beyond a reasonable doubt." It clearly appears from the charge of the court that the substance of this instruction was given to the jury. It instructed the jury that: "In order to convict, the circumstances must be so strong as to exclude every reasonable hypothesis, except the guilt of the defendant, and, if the facts proven in this case can be explained upon a reasonable hypothesis consistent with the innocence of the defendant, you will then return a verdict of not guilty." Again the court charged the jury: "If you can reconcile the evidence before you upon any reasonable hypothesis consistent with the defendant's innocence, you should do so, and in that case find him not guilty." It will thus be seen that the instruction requested was embodied in the judge's charge, though in the court's own language. The trial court is not required to give an instruction in the exact language in which it is submitted, although it is correct in every respect; but it may be refused, and such instruction given by the court in its own language.

In 2 Thompson on Trials, § 2352, that learned author, in discussing this question, says: "It is not error for the judge to refuse requests for instructions upon propositions which have else-

where been sufficiently covered, either in his general charge or in other special instructions given; and it is a principle upon which appellate courts uniformly act that the judgment will not be reversed for the refusal of instructions, if the court can see that the case was placed fully, fairly, and properly before the jury by the instructions which were given, although the requests refused may have been correctly drawn in point of law and in their application to the evidence. Nay, where the judge has sufficiently instructed the jury, he should, as a rule of practice, refuse additional instructions; for, as elsewhere seen, a multiplicity of instructions, although correct in themselves, tends to confuse and embarrass the jury." It may be that the instructions requested present the law in a more pointed manner than those which the court has given; but it is sufficient that the jury were properly instructed in substance. Counsel cannot, by presenting special requests, dictate the frame of language in which instructions shall be given; but "when several forms of expression are equally accurate, it is within the discretion of the trial court to choose that form which it deems best adapted to make the rule of law intelligible to common minds." The rule also rests upon the conception "that courts will presume jurors to be men of average intelligence, and capable of understanding and bearing in mind a proposition of law once fully and clearly stated, without its repetition in subsequent instructions." And that learned author, in support of the proposition, cites a very large number of authorities, both from the federal and state courts.

It is further contended by the appellant that the court erred in its refusal, at the close of all the evidence, to advise the jury to render a verdict in favor of the defendant, and in denying defendant's motion for a new trial on the ground that the evidence was insufficient to sustain the conviction. A review of the evidence, however, satisfies us that the jury was fully warranted in finding the defendant guilty, though the evidence was entirely circumstantial; there being no direct or positive evidence as to the defendant's guilt.

The evidence in the case is quite voluminous, and no useful purpose would be served by a reproduction of the same in this opinion.

The judgment of the circuit court and order denying a new trial are affirmed.