[No. 14071. Department Two. January 16, 1918.]

EDWARD W. SWANSON, *Respondent* v. CHARLES S. HOOD *et al.*,
*Appellants.*[1]

APPEAL—RECORD—STATEMENT OF FACTS—NOTICE OF SETTLEMENT.
Under Rem. Code, § 389, implying a reasonable time for notice of
settling a statement of facts, three days' notice of the time fixed for
January 6, 1917, is sufficient, where the proposed statement was
served October 23, 1916, amendments were made in November, the
nonresident judge was unable to attend until December 26, at which
time respondent demanded the statutory three days' notice.

SAME—HARMLESS ERROR. The duplication of matters in the
transcript and statement of facts, is not prejudicial, except as affect-
ing the taxation of costs, and is not ground for striking.

SAME—RECORD—OPINION. The memorandum decision of the trial
judge in ruling on a motion for judgment is not properly part of
the transcript, and will be stricken on motion.

PHYSICIANS AND SURGEONS—MALPRACTICE—NEGLIGENCE—QUESTION
FOR JURY. In an action for malpractice, where there is any evidence
tending to show negligent performance, as distinguished from negli-
gence in the choice of methods each having the approval of different
schools, the question is for the jury; as where, in using the Lane
method of reducing a' fracture, the defendant drilled holes in the
bone too large, and therefore had to use wire, which he later re-
moved with great force, pulling splinters of the bone away.

SAME — MALPRACTICE — CONTRIBUTORY NEGLIGENCE—QUESTION FOR
JURY. Upon an issue as to contributory · negligence in using a
fractured arm, the question is for the jury where the use com-
plained of was denied, and there was some evidence that the
physician recommended moderate use, and at different times took
hold of the hand and rotated the forearm.

DEPOSITIONS—TIME FOR TAKING—STIPULATIONS. Where a deposi-
tion was taken on stipulations that it might be taken any day prior
to March 24th and that the hearing might be adjourned from day
to day, a recitation that it was taken beginning on March 16th and
from day to day until March 24th, shows that it was properly taken,
although it failed to indicate actual adjournments.

EVIDENCE—OPINION EVIDENCE—MEDICAL EXPERTS. In an action
for malpractice by a physician in reducing a fracture, the testimony
of an osteopath is admissible, although he did not belong to the

[1]Reported in 170 Pac. 135.

same school, where it appears that he had studied operative surgery and authorities thereon recognized the school of the operating physician; since the opinion of a medical expert is admissible, though based upon the study of books rather than experience, and the criterion of competency is the basis of his opinion, not the school to which he belongs.

EVIDENCE — OPINIONS — HYPOTHETICAL QUESTIONS—REFERENCE TO ALL CONDITIONS—ASSUMING FACTS. In an action for malpractice in reducing a fracture, it is error to allow hypothetical questions to medical experts calling for their opinions, which did not include a reference to all the conditions; such as the use of splints used in addition to metal plates; the physical condition of the patient who was suffering from bronchial trouble, touching on the question of infection; and in assuming that wire was not boiled, and in assuming that there was a fibrous union, when there was no evidence of such facts, but evidence to the contrary.

PHYSICIANS AND SURGEONS—MALPRACTICE—NEGLIGENCE—EVIDENCE—SUFFICIENCY. In an action for malpractice, it is error to refuse a requested instruction that the presence of infection was no evidence of negligence and that there was no liability for the infection first appearing, where the evidence of due care as to infection was uncontradicted and there was no sufficient evidence of responsibility for the primary infection.

Appeal from a judgment of the superior court for Whatcom county, Brawley, J., entered May 31, 1916, upon the verdict of a jury rendered in favor of the plaintiff, in an action for malpractice. Reversed.

*Ellis Lewis Garretson, W. E. Barnhart,* and *Craven & Greene,* for appellants.

*Bixby & Nightingale,* for respondent.

ELLIS, C. J.—Action for damages claimed as resulting from alleged malpractice and negligence of a physician in setting a broken arm. The evidence is so voluminous, comprising some 1,200 pages of typewritten matter, as to make it impracticable to discuss it in detail. We can do no more than present the bare outline necessary to an understanding of the general nature of the case.

On April 23, 1913, plaintiff, a merchant of Ferndale, Washington, broke both bones of his right forearm while

cranking an automobile; the radius was fractured trans-versely at a point about three inches, and the ulna obliquely at a point about five inches, above the wrist joint. Defend-ant Charles S. Hood, a practicing physician, residing in the same town, was called to set the arm. He first attempted to reduce the fractures with the assistance of a trained nurse, retaining the bones in temporary wooden splints. Thereafter, on the same day, he took plaintiff to Bellingham, Washing-ton, where an X-ray examination disclosed that one of the bones had slipped out of alignment. Five unsuccessful at-tempts were made by defendant, with the assistance of two other surgeons, to reduce the fracture by manipulation. The radius would slip out of alignment at one time and the ulna at another. The three surgeons decided it was a case for incisive operation, as, in their opinion, facia or muscular tissue had intervened between the broken ends of the bones. Plaintiff was thereupon taken to a hospital in Bellingham, placed under an anesthetic, and the fracture treated accord-ing to the Lane plate method. This consists in attaching metallic plates to the broken bones with screws, for the pur-pose of holding the ends in apposition and alignment. Three-holed plates were employed on each bone, that is, plates hav-ing a hole at either end and one in the middle to admit screws. Because of the danger of splitting the ulna, instead of using the screw in the middle hole, a wire was wound around the plate and bone. Plaintiff continued in the hospital the whole of the next day, during which he developed a considerable temperature and incipient bronchitis. On the following day he insisted on returning to his home in Ferndale, where he suffered a chill followed by high temperature. The day after reaching home a severe case of infection developed, and the wound over the ulna was, on the following day, opened and discharged much pus. Plaintiff charged that the infection was due to the use of unsterilized wire or some other negli-gence in the operation, while defendants claim that it was due to a constitutional condition resulting from the bronchial

trouble. The wound was dressed twice a day for about two weeks, and then once a day until June 9, 1913, when the plate and wire were removed from the ulna.

During all of this time the wound had been discharging pus, but after the removal of the plate and wire, the discharge gradually subsided and finally ceased. The surgeons who had been consulted when the plates were applied, as well as defendant, subsequently advised a curettement of the ulna for the removal of dead bone and waste matter so as to allow the ends of the living bone to bridge over the fracture. Plaintiff did not consent to the operation until about a month later. There was, however, some evidence that defendant consented to a delay. The curettement was performed on August 10, 1913. At that time the bones were in apposition and alignment and there was a partial union of both fractures, that of the ulna, however, only at one edge and very slight. Defendant applied the last dressing on September 4, 1913, telling plaintiff that there was a delayed union but, with prudent care, he would have a good arm by the next spring. There was evidence that plaintiff, as early as July, 1913, made some use of the arm in driving his automobile and in working about his store. He testified, however, that he did not use the arm at all until Thanksgiving day, 1913, and then only to lift a cup of coffee; he also testified that defendant had instructed him to use the arm some, and that defendant himself had taken hold of the hand and violently rotated it.

The fracture did not heal properly, and in August, 1914, plaintiff had an examination made by another physician and was informed that the ulna had no bony union but was connected only by fibrous tissue, and that another operation in the nature of bone grafting would be necessary. Later, other eminent surgeons were consulted and confirmed that diagnosis. The radius had not healed in proper alignment, but was slightly bowed or curved, and the fractured ends of the ulna were separated by a space of about one-eighth of an inch. On May 12, 1915, plaintiff commenced this action for

damages against the community composed of Charles S. Hood and wife, alleging malpractice and negligence on the part of the former, and alleging fraud on his part in wilfully concealing from plaintiff, at the time he discontinued treatment, that there was a false union, and then assuring him that there was merely a delayed union which would become complete and perfect in half a year without the necessity of further surgical assistance. The answer denied all the allegations of negligence on defendant's part and set up, as an affirmative defense, contributory negligence on the part of the plaintiff in leaving the hospital contrary to instructions, and in using the broken arm in tying bundles and driving his automobile, and in failing to comply promptly with defendant's recommendation in July, 1913, to submit to a curettement. The jury returned a verdict against defendant for $4,000. This was reduced by the lower court, plaintiff acquiescing, in the sum of $1,000, and judgment was entered for $3,000. Defendants appeal.

Respondent moves to strike the statement of facts on the ground that notice of settlement was not served upon him until sixty-three days after he had served upon appellants his proposed amendments and objections to the proposed statement. Our statute, Rem. Code, § 389, governing notice of settlement of statement of facts fixes no time therefor, hence a reasonable time is implied. In *Floding v. Denholm,* 40 Wash. 463, 82 Pac. 738, this court held that notice given four months subsequent to the filing of the proposed statement was not an unreasonable time when it appeared there was no intention of abandoning the appeal. In the case before us, the proposed statement was served October 23, 1916, respondent's objections and proposed amendments were served November, 1916; the trial was before a nonresident judge, and though his attendance in the county for the purpose of settlement was requested in November, he was unable to attend until December, 1916, at which time respondent demanded the statutory three days' written notice of settlement. The judge

fixed as the time of settlement January 6, 1917, and three days' notice prior to that date was given to respondent. The case is well within the rule of the *Floding* case. The motion is denied.

Respondent further moves to strike certain portions of the statement of facts which embody things which, under Rem. Code, § 395, are required to be included in the transcript. While that section provides that "it shall not be necessary or proper, for any purpose, to embody the same in any bill of exceptions or statement of facts," and a duplication of the same matters in the transcript and statement is plainly not necessary, neither is it prejudicial, except as affecting costs. This matter can be met, if necessary, when the appeal costs are taxed. The motion is denied.

Finally, respondent moves to strike from the statement the memorandum decision of the trial judge in ruling on the motion for judgment *non obstante veredicto* and for a new trial; this, on the ground that such decisions, not being made a part of the statement of facts, are not properly a part of the record. The motion must be granted for the reason stated in our recent decision in *In re Patterson*, 98 Wash. 334, 167 Pac. 924.

On the merits, appellants have assigned some seventy claims of error, which require for their bare statement forty-one pages of the printed brief. It is, of course, impracticable to discuss all of these within the limits of an opinion. We shall, therefore, confine our discussion to those points which seem to us determinative of the appeal.

Appellants contend that the evidence presented no issue of fact for the jury, in that no expert witness of the same school of practice as that of appellant would say that the method of treatment employed was not the proper one. It is asserted that the case is one for the court alone, and to be determined upon expert testimony alone. Reliance is placed upon statements made in some of our decisions that it is enough if the treatment employed "had the approval of at least a respect-

able minority of the medical profession who recognized it as the proper method of treatment." *Dahl v. Wagner,* 87 Wash. 492, 151 Pac. 1079; *Lorenz v. Booth,* 84 Wash. 550, 147 Pac. 31. These decisions, however, go no further than to say that a physician cannot be held as for malpractice when no more is shown than a difference of opinion among experts as to whether or not there was an error of judgment in adopting the method of treatment which was adopted. As said in the *Lorenz* case, touching the use of the Lane method here involved, when there is more than one recognized method of treatment for a particular character of case, "the attending physician is not liable for an honest mistake of judgment in his selection of the method of treatment."

But there is an obvious distinction between a claim of negligence in the choice of methods of treatment and a charge of negligence in the actual performance of the work or treatment after such choice is made. As to the first, the charge is refuted, as a matter of law, by showing that a respectable minority of expert physicians approved of the method selected, thus taking the case from the jury. As to the second—a charge of negligent performance—where there is any evidence tending to show such negligence the case is for the jury, as in other cases of negligence, whenever upon the evidence the minds of reasonable men might differ. We think the case here falls within the latter category. There was evidence that appellant admitted to respondent, respondent's wife, his mother-in-law and his clerk that he drilled the holes in the bone too large for the screws used in placing the plate, and, for that reason, wrapped the plate and the bone with a wire, and that the wire caused the trouble. There was also evidence that, in removing the wire, appellant had used great force, and in removing the plate, splinters of bone were pulled away. True, this use of excessive force was controverted by appellant and some of his witnesses, but the conflict made a question for the jury. Appellant himself testified that he and other doctors thereafter advised a

curettement because the X-ray picture showed a delayed union. The jury might have inferred from the evidence that the force used in removing the wire was in itself sufficient to destroy any incipient union which might have existed, and thus caused the final failure of the bone to unite. Aside from any expert evidence on the subject, such an inference might reasonably be drawn by any man of common understanding. These things present questions of negligence, pure and simple, and were for the jury. They were not questions relating to the discretion of the physician in his choice between recognized methods of treatment. The court instructed the jury as follows:

"You are instructed that, if you should believe from the evidence that there are several methods by which a treatment of the fracture of the plaintiff's arm, such as you find the plaintiff's to have been and which several methods are recognized by physicians and surgeons of ordinary reasonable skill and ability, then the defendant was at liberty to follow any one of such recognized methods and cannot be held responsible for following one of these methods rather than another, even though you should believe that by following one of such methods a better treatment and result would have been accomplished."

This instruction might have been better had it added the distinction which we have made. The evidence would have warranted an instruction categorically taking from the jury the question of negligence in resorting to the Lane plate method and limiting this phase of the question to negligence in the manner in which that method was employed or performed, but no such instruction was requested.

We are further of the opinion that the question of contributory negligence was also one for the jury. Though there was evidence that respondent used his arm in driving his automobile and in working about his store, he himself contradicted these charges. Moreover, there was some evidence that appellant recommended a moderate use of the

17—99 WASH.

arm, and himself, at different times, took hold of appellant's hand and rotated the forearm. On such a conflict of evidence, no court would be warranted in holding respondent guilty of contributory negligence as a matter of law.

It is contended that the court erred in refusing to suppress the deposition of Dr. J. C. McFadden, a physician of the osteopathic school. The first ground of the motion to suppress seems to be that the stipulation under which it was taken was violated. The deposition recites that it was taken "beginning on the 16th day of March, 1916, and from day to day until the 24th day of March, 1916." There is nothing to indicate an actual adjournment from day to day. Appellants assert that this vitiates the deposition. Such seems to be the rule where a deposition is taken upon notice, but this deposition was not taken upon notice, but upon a stipulation that it might be taken "on any day prior to March 24th, 1916," and that the hearing might be adjourned from day to day. It was taken upon interrogatories and cross-interrogatories. Obviously no prejudice could result if taken upon any or all of the days within the period fixed by the stipulation. We find no error in the refusal to suppress the deposition on this ground.

It is next asserted that the deposition should be suppressed because certain cross-interrogatories were not fully answered. We fail to find any question unanswered. True, some answers were stricken and some partially stricken, but there was no such contumacious failure to answer, or to answer frankly, as would vitiate the deposition.

Finally, in this connection, it is contended that the deposition was inadmissible because the witness was an osteopath, whereas appellant belongs to the allopathic school. Appellant takes the broad position that a physician of one school is not competent to testify in a suit for malpractice or negligence of a physician of another school. Several decisions are cited which it is claimed support this view, but as we read them they hardly go that far. The rule is not that a

physician of another school is not competent to testify, but that a defendant's treatment is to be tested by the general doctrine of his own school, which is a very different thing. In other words, the standard of exclusion of evidence is not the school of the witness but the premises of his testimony. If the premises from which he testifies, that is to say, the criterions by which he measures defendant's treatment, are those of defendant's own school, the witness is not disqualified merely because he himself belongs to another school. *Bowman v. Woods,* 1 G. Greene (Iowa), 441; *Force v. Gregory,* 63 Conn. 167, 27 Atl. 1116, 38 Am. St. 371, 22 L. R. A. 343; *Martin v. Courtney,* 75 Minn. 255, 77 N. W. 813; *Patten v. Wiggin,* 51 Me. 594, 81 Am. Dec. 593; *Grainger v. Still,* 187 Mo. 197, 85 S. W. 1114, 70 L. R. A. 49.

In qualifying, the witness McFadden stated he had studied operative surgery in college and that he had studied certain works of the late Dr. John B. Murphy, of Chicago, a recognized authority on operative surgery. Appellant himself admitted that Dr. Murphy was one of the foremost authorities on operative surgery in the world. The witness also testified that he had studied certain English works treating specifically of the Lane plate method. Clearly the basis or criterion by which the witness measured appellant's use of this method was that of appellant's own school. The distinction which we have attempted to make was covered by an instruction of the trial court as follows:

"In this connection you are also instructed that if you find that there is more than one branch or school of physicians and surgeons which applies or uses different methods in the treatment of bone fractures, to one of which schools the defendant belongs, he is only expected to follow the method ordinarily followed by the school to which he belongs and the question of his skillfulness, carelessness or negligence is not to be governed by the beliefs or practices of any other school of physicians or surgeons."

As limited by this instruction, the testimony of the witness, though an osteopath, was clearly competent.

Nor are we impressed with the claim that this witness was disqualified because he had no right to practice the allopathic system and has only a theoretical knowledge of that system. So long as the opinion of the medical expert is his own it is admissible, though it be based on the study of books rather than on his own experience. Jones, Evidence (2d ed.), § 368; *People v. Phelan*, 123 Cal. 551, 56 Pac. 424; *Finnegan v. Fall River Gas Works*, 159 Mass. 311, 34 N. E. 523; *Hardiman v. Brown*, 162 Mass. 585, 39 N. E. 192; *People v. Thacker*, 108 Mich. 652, 66 N. W. 562. Even a nurse is competent to testify as an expert from her own observation as to whether a given operation was performed in the usual manner and with the usual care. In fact, in this case, appellant himself called the nurse to negative respondent's charge of surgical uncleanliness and excessive force and to say that appellant used no greater force than the usual skilled manipulation of a surgeon. Such evidence is competent; its weight is for the jury. So here, when it once appeared that the osteopathic physician was basing his testimony on the tenets of appellant's own school, his testimony was admissible; its weight was for the jury. The admission of this testimony then became largely a matter for the discretion of the trial court, as in other cases of expert testimony.

Appellants base assignments of error upon certain hypothetical questions propounded in the deposition, claiming that they were too narrow. These questions omitted the admitted fact that splints were used in addition to the metal plates. The court held that the hypothetical questions directed solely to the manner of placing the plates need not include the fact that splints were also used, but that those questions calling for the opinion of the witness as to whether or not the use of a single screw in each end of the plate accounted for the healing of the radius in a bowed condition should have included a reference to all the conditions, among them, the fact that external splints and casts were used. The

last ruling was clearly correct. Where a final bad result of any sort of operation is sought to be accounted for by expert opinion the question should include everything in evidence which could reasonably contribute to that result. But it seems to us that the first ruling was wrong; there was evidence that the plates were secured by one screw at each end with no screw in the middle hole, so that it had a tendency to operate as a hinge instead of producing a condition of immobility, and that this was sought to be overcome by wrapping a wire around the middle of the plate and around the bone and by using splints. Since apposition, alignment and immobility were the things desired and sought to be obtained, it might be that an expert would say that the first two of these being attained by the plate with only two screws, the last, namely immobility, might be secured by the use of splints or a cast in conjunction with the plate and by wrapping with wire. The hypothetical question should have included all these elements.

Another question relating to the cause of infection included an assumption that the wire was not boiled or in any manner sterilized. This was objected to on the ground that there was no evidence that the wire was not boiled. The court overruled the objection, saying "that question will be for the jury as to whether or not the facts agree." There was some evidence that the wire had been boiled and no evidence that it had not. Negligence cannot be presumed. This question and the answer should have been excluded.

Another hypothetical question touching the infection made no reference to the physical condition of the patient, though there was evidence that, at the time, he was suffering from a bronchial trouble which might have accounted for the infection of the wound. We think that the failure to include this element in the hypothetical question was also error.

Still another hypothetical question was directed to the failure to remove fibrous tissue at the time of the curette-

ment on August 10, 1913. This question assumed that there was a fibrous union at that time. There was no such evidence; in fact, the evidence was to the contrary. The question should have been excluded.

Finally, appellant contends that the court erred in giving certain instructions and in refusing to give others. We have carefully examined all of the instructions given and they seem to us fairly to cover the law of the case, and so far as the requests were proper, the ground covered by such requests was covered, save in one particular. Appellant requested an instruction as follows:

"You are further instructed that the mere presence of infection is no evidence in itself of negligence on the part of the defendant physician, and in this connection, you are instructed that there is no liability on the part of the defendant physician for the infection first appearing in plaintiff's forearm following the operation, and that there is no issue presented to you under the facts on which defendant can be held liable for the infection first appearing in plaintiff's forearm."

A careful consideration of the evidence convinces us that there was no evidence sufficient to take to the jury the question of appellant's responsibility for the primary infection of the forearm. The evidence was uncontradicted that all of the instruments, materials and accessories used in the operation were surgically clean. The requested instruction, or one in some form taking this question from the jury, should have been given.

The judgment is reversed, and the cause is remanded for a new trial.

HOLCOMB, PARKER, FULLERTON, and MOUNT, JJ., concur.