BRYANT *v.* BIGGS.

1. PHYSICIANS AND SURGEONS—IMPLIED CONTRACT AS TO DILIGENCE AND SKILL.

> The implied contract between a patient and a surgeon requires the latter to use the degree of diligence and skill ordinarily exercised by the average of the members of the profession in the same locality or in similar localities, with due consideration to the state of the profession at the time.

2. SAME—OSTEOPATHS—SKILL REQUIRED.

> An osteopathic surgeon has the duty to use that degree of care and skill in the handling of a thyroid condition in a patient, and in the treatment given the patient, that is customarily used in the community or similar communities by ordinary or average practitioners of osteopathy and is not held to the observance of standards of practice or methods of practice customarily observed by practitioners belonging to other schools devoted to the cure, alleviation, and treatment of human ailments and diseases.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur, Physicians and Surgeons §§ 86, 87.
[2-4, 6, 8] 41 Am Jur, Physicians and Surgeons § 85.
[2-4, 6, 8] Competency of physician or surgeon of school of practice other than that to which defendant belongs to testify in malpractice case. 78 ALR 697.

3. SAME—OSTEOPATHY—STANDARD OF PRACTICE—EXPERT TESTIMONY.
  Practitioners of other schools of treatment than osteopathy, no
    matter how well qualified by study and experience in their own
    methods and standards but lacking the requisite knowledge of
    the specific matter in question in a malpractice action against
    an osteopath could not competently express opinions, since the
    requisite degree of care and skill in the treatment of plain-
    tiff's decedent by defendant could not be established other
    than by the testimony of an expert or experts familiar with
    the ordinary methods and standards of practice of osteopathic
    practitioners in the community or in similar communities.

4. SAME—OSTEOPATHS—PATIENT.
  A patient who seeks treatment from an osteopath for the cure
    or alleviation of his condition is charged with knowledge of
    the fact that the osteopath would follow the methods and prac-
    tices observed in the osteopathic system of treatment, and is
    not in a position to complain that the methods and standards
    of practice customarily observed by another school of medicine
    were not followed.

5. SAME—SCHOOLS OF MEDICINE.
  A school of medicine relates to the system of diagnosis and treat-
    ment and while the law recognizes that there are different
    schools of medicine, it does not favor, or give exclusive recog-
    nition to, any particular school or system of medicine, as against
    the others.

6. SAME—SCHOOL OF MEDICINE—STANDARD OF PRACTICE.
  The question whether or not a practitioner in his treatment of a
    case exercised the requisite degree of care, skill, and diligence
    is to be tested by the general rules and principles of the particu-
    lar school of medicine which he follows, and not by those of
    other schools, since he is only under the duty of exercising the
    degree of skill and care ordinarily exercised by practitioners
    of his school.

7. SAME—SCHOOL OF MEDICINE—MALPRACTICE.
  A school of medicine, in order to be entitled to recognition in an
    action for malpractice, must have rules and principles of prac-
    tice for the guidance of all its members with respect to prin-
    ciples, diagnosis, and remedies, which each member is supposed
    to observe in any given case.

8. SAME—MALPRACTICE—OSTEOPATH—TREATMENT OF THYROID CONDITION.

> Testimony of allopathic doctor as to standard of practice in the treatment of a thyroid condition was inadmissible in malpractice action against osteopath, where the witness, who may have been qualified to testify as to his own school's method of treatment, repeatedly stated he had no knowledge as to methods and standards of practice generally of osteopathic practitioners.

Appeal from Wayne; Marschner (Adolph F.), J. Submitted June 7, 1951. (Docket No. 39, Calendar No. 44,398.) Decided September 5, 1951.

Action by Katherine Bryant, administratrix of the estate of Luther Monroe Bryant, deceased, against Raymond A. Biggs and another for malpractice. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*Gvazda & Shere* (*Walter M. Nelson*, of counsel), for plaintiff.

*Ward & Plunkett* and *Maxwell L. Sargent*, for defendants.

CARR, J. Plaintiff administratrix brought suit in circuit court to recover damages from the defendants on the ground that they, as osteopathic physicians and surgeons, negligently and improperly treated her decedent, and that his death occurred as a result. The declaration filed alleged that prior to January 19, 1944, Mr. Bryant was suffering from an ailment for which he sought alleviation or cure, and that for such purpose he consulted defendant Neilson who recommended that the patient undergo surgery and referred him to the defendant Biggs. On January 20, 1944, Mr. Bryant entered a hospital and on the 23d of January following he underwent a surgical operation known as a thyroidectomy

which was performed by defendant Biggs allegedly at the direction of defendant Neilson. Plaintiff further asserted in her pleading that defendants were negligent in failing to make proper examinations and tests prior to the operation for the purpose of determining whether the patient was able to withstand the thyroidectomy, in failing to give proper preoperative medication and treatment, and in performing the operation under the existing circumstances with reference to Mr. Bryant's condition at the time. The alleged cause of action was based on the theory that the death of the patient, which occurred on the day following the operation, was occasioned by improper methods and lack of due and proper care on the part of the defendants.

Plaintiff averred in her pleading that it was the duty of the defendants Neilson and Biggs to "attend plaintiff's decedent in a skillful and careful manner, to use those methods of examination, diagnosis, and surgery which are usually prescribed and used in the art and profession of osteopathic medicine and surgery for same purposes and to use and avoid failing to use methods, tests, and laboratory means which might result in grievous injury to the plaintiff's decedent; and to carefully examine and test plaintiff's decedent, including basal metabolism laboratory tests, cardiograph, and X-ray treatment before undertaking surgery upon the plaintiff's decedent's body, and to use proper care, attention, medication, and treatment prior to the surgical operation for the purpose of properly preparing the plaintiff's decedent for surgical operation so as to reduce the risks thereto involved." In answer to the declaration defendant Biggs admitted the performance of the operation and his duty to attend plaintiff's decedent in a skillful and careful manner, and "to use the methods prescribed by the profession of osteopathy." He further averred that such duties

were fully performed by him. He denied that a basal metabolism test, cardiograph, or X-ray treatment, were necessary to a proper diagnosis of the plaintiff's decedent's condition, and alleged that "the usual care, attention, medication and treatment was given to plaintiff's decedent prior to the surgical operation." Defendant Neilson by his answer denied any participation in the operation, by direction or otherwise.

The proofs offered by plaintiff on the trial indicated that Mr. Bryant had been suffering for several years from a thyroid condition. He consulted a physician of the allopathic school, who testified to examining him and advising as to the procedure deemed proper by the witness. It does not appear that the patient attempted to follow the advice given him. The witness also testified to what he considered to be the usual treatment of the ailment from which the patient was suffering. His statements indicate that he had reference to the methods and procedure of his own school of practice. He did not claim any knowledge with reference to osteopathy or the methods, or the degree of care and skill, customarily followed and exercised by osteopathic practitioners in the community or similar communities. He expressed no opinion as to the alleged negligent conduct of the defendants.

Plaintiff's principal witness was a physician and surgeon duly licensed as such in the State of Michigan, who was qualified as an expert in his field of practice. He testified to experience on his part in treating thyroid patients. In answer to a hypothetical question based on the history of the case, including the hospital treatment, the witness was permitted to state, over the objection of counsel for defendants, what he considered to be the standard of practice involved in the management of a case of the nature set forth in the hypothetical question. The

hospital record indicates that the treatment actually given Mr. Bryant was not in accord with the claim of the witness as to the standard practice. In answer to a specific question he was permitted, over objections, to express the opinion that the failure in the instant case to comply with the standards of practice detailed by him might or could reduce the patient's chance of survival or cause death.

Defendants' objections to the testimony of the witness, and their subsequent motion to strike, were based principally on the claim that the witness did not know the methods of treatment, care, and operation customarily followed by practitioners of osteopathy, or the degree of care and skill customarily employed by ordinary practitioners of such school in the community or similar communities. In this connection the witness testified that he was not familiar with osteopathic schools, and that he had no knowledge as to their teachings other than by hearsay. He had never attended any osteopathic clinics, or discussed with osteopathic physicians and surgeons the question as to what constitutes proper preoperative or postoperative care. He indicated also that he was not familiar with osteopathic literature, and that he had no knowledge of the fundamental concepts of osteopathy or the osteopathic viewpoints of symptomology.

Following the expert testimony offered in plaintiff's behalf counsel for the defendants moved for directed verdicts. On behalf of defendant Neilson it was claimed specifically that plaintiff's proofs were insufficient to connect him with the acts of omission and commission charged in the declaration as the basis of the cause of action. Both defendants urged that the testimony of plaintiff's expert witness was incompetent because not based on any familiarity with, or knowledge of, the methods and standards of practice of osteopathic physicians and

surgeons customarily observed by reputable practitioners of that school in the community and in similar communities. After considering the testimony and listening to the arguments of counsel, the trial judge came to the conclusion that he could not say that the testimony was competent and that it established a prima facie case. He also indicated that the testimony relating to defendant Neilson's connection with the operation, and with the preoperative and postoperative care and treatment given to the patient, was insufficient to impose liability on him. Verdict in favor of both defendants was directed and judgment entered accordingly. Plaintiff has appealed.

On behalf of appellant it is argued that the testimony of her principal witness, above discussed, should be construed as expressing an opinion on his part that the methods and standards of practice detailed by him were recognized and followed by ordinary practitioners of the osteopathic school, as well as by those of his own school. The claim is made that such testimony was sufficient to require submission of the case to the jury. Defendants contend, as they did in the trial court, that the witness replied to the hypothetical question submitted to him solely from the standpoint of the school of practice to which he belonged, and that his lack of knowledge of the teachings of osteopathy and of the concepts, methods, and standards of practitioners of osteopathy rendered him incompetent to express an opinion on the matter at issue. It is their position that the trial court properly directed a verdict in their favor.

It has been repeatedly held by this Court that the implied contract between a patient and surgeon requires the latter to use the degree of diligence and skill ordinarily exercised by the average of the members of the profession in the same locality or

in similar localities, with due consideration to the state of the profession at the time. *Miller* v. *Toles,* 183 Mich 252 (LRA 1915C 595); *Rytkonen* v. *Lojacono,* 269 Mich 270; *Zanzon* v. *Whittaker,* 310 Mich 340; *Nemer* v. *Green,* 316 Mich 307; *Facer* v. *Lewis,* 326 Mich 702. In the instant case it was the duty of the defendants, as alleged by plaintiff in her declaration, to treat Mr. Bryant's ailment with due and proper care. Stated more specifically, it was their duty to use that degree of care and skill in their handling of the case, and in the treatment given the patient, customarily used in the community or similar communities by ordinary or average practitioners of osteopathy. They were not held to the observance of standards of practice or methods of practice customarily observed by practitioners belonging to other schools devoted to the cure, alleviation, and treatment of human ailments and diseases. It may be noted in this connection that the registration of physicians and surgeons in this State is subject to the provisions of PA 1899, No 237, as amended (CL 1948, § 338.51 *et seq.* [Stat Ann and Stat Ann 1949 Cum Supp § 14.531 *et seq.*]). The regulation of the practice of osteopathy is provided for by PA 1903, No 162, as amended (CL 1948, § 338.101 *et seq.* [Stat Ann and Stat Ann 1949 Cum Supp § 14.571 *et seq.*]). The latter act created the State board of osteopathic registration and made provision for the examination of applicants for registration as practitioners of osteopathy. The certificates issued to those entitled to registration authorizes the practice of osteopathy "as taught and practiced by the recognized colleges or schools of osteopathy."

In the instant case the alleged failure of defendants to exercise the requisite degree of care and skill in the treatment of plaintiff's decedent could not be established other than by the testimony of an

expert or experts familiar with the ordinary methods and standards of practice of osteopathic practitioners in the community or in similar communities. Practitioners of other schools of treatment, no matter how well qualified by study and experience in their own methods and standards but lacking the requisite knowledge of the specific matter in question, could not competently express opinions. In *Janssen* v. *Mulder,* 232 Mich 183 (25 NCCA 248), an action for damages for alleged malpractice, the defendant was a graduate of a chiropractic school and assumed to treat human ailments in accordance with the system taught in such school. In commenting on the burden of proof resting on the plaintiff, it was said:

"It necessarily follows that such proof must be made by one engaged in treatment by similar methods to those employed by defendant. With the merits of the several drugless systems of relieving human ailments the courts have no concern. It is sufficient to say that many of our citizens believe in their efficacy and secure the services of those engaged in practicing them. The treatment given by any one of such practitioners would probably be deemed improper and unskillful when judged by physicians who are taught to treat such ailments by the use of drugs and medicines. The unfairness of permitting the test as to whether a particular treatment was proper or skillful to be determined by one who uses a different method, or follows the teaching of another system, must be manifest."

In *Sima* v. *Wright,* 268 Mich 352, it was held that a doctor of osteopathy was not competent to give expert testimony as to local medical practice without a showing that he knew such practice.

It may be assumed that plaintiff's decedent was aware that defendants were osteopathic practitioners and that for reasons satisfactory to himself he

sought treatment from them for the cure or alleviation of his condition. In doing so he was, of course, charged with knowledge of the fact that they would follow the methods and practices observed in their system of treatment. Plaintiff is not in position to complain that the methods and standards of practice customarily observed by another school were not followed. The general rule is summarized in 70 CJS, p 953 as follows:

"A school of medicine relates to the system of diagnosis and treatment. While the law recognizes that there are different schools of medicine, it does not favor, or give exclusive recognition to, any particular school or system of medicine, as against the others. When a patient selects a practitioner of a recognized school of treatment he adopts the kind of treatment common to that school, or, as otherwise stated, he is presumed to elect that the treatment shall be according to the system or school of medicine to which such practitioner belongs. The question whether or not a practitioner in his treatment of the case exercised the requisite degree of care, skill, and diligence is to be tested by the general rules and principles of the particular school of medicine which he follows, and not by those of other schools, since he is only under the duty of exercising the degree of skill and care ordinarily exercised by practitioners of his school. A school of medicine, in order to be entitled to recognition under this rule, must have rules and principles of practice for the guidance of all its members, with respect to principles, diagnosis, and remedies, which each member is supposed to observe in any given case. A practitioner who claims to follow a particular school must be held to the degree of skill and care ordinarily used by practitioners of that school, and where a practitioner of one school follows methods used in another school he must use the skill and care required of a practitioner in the latter school."

Likewise in 41 Am Jur, pp 242, 243, it is said:

"The general rule of substantive law that a physician's treatment of his patient as to care and skill, or negligence, is to be tested by the principles and tenets of the school of medicine to which he belongs, has already been discussed. And as a general rule, the defendant in a malpractice action is entitled to the testimony of competent practitioners of his own school of medicine as to the teachings of that school and his conformity thereto in his treatment of his patient, on the issue of whether he exercised the requisite degree of skill and care in such treatment. This rule has been applied in favor of members of the school of homeopathy, allopathy, osteopathy, chiropractic, and of Christian Science healers, and practitioners of the botanic school. This rule does not, however, exclude the testimony of physicians of other schools or experts in other lines when that testimony bears on a point as to which the principles of the two schools concur, such as matters of diagnosis, the methods and dangers of the use of X-ray or other electric or mechanical appliances in common use by the several schools, or the existence of a condition that should be recognized by any physician of any school. There is authority, however, which emphasizes the point that the tenets and standards of treatment which form the premises for the testimony must be so substantially the same on the point in issue as to afford a true test."

The rule as stated in Corpus Juris and in American Jurisprudence is supported by decisions of the courts. In *Forthofer* v. *Arnold,* 60 Ohio App 436 (21 NE2d 869), the plaintiff, suing for damages for alleged malpractice on the part of the defendant, a physician and surgeon, offered as expert witnesses 2 doctors of the osteopathic school, each of whom testified as to the treatment that he thought proper in a case of the character in question. At the conclusion of plaintiff's proofs the testimony was strick-

en from the record and a verdict directed for the defendant. In holding that the trial court was not in error in striking out the testimony, it was said:

"In malpractice actions it is a well-recognized rule, and one which has the approval of this court, that the care, skill and diligence exercised by the defendant is to be judged by that standard of ordinary care which ordinarily is exercised by physicians and surgeons of the same school of medicine in the same general neighborhood, or in a similar locality."

In *Bush* v. *Cress,* 181 Minn 590 (233 NW 317), the defendant, a physician of the allopathic school of medicine, was sued for damages for alleged malpractice in connection with an operation in an obstetrical case. Among other experts a witness of a different school was permitted to testify in plaintiff's behalf. In holding that such testimony was improperly received, it was said:

"An assignment of error is also based upon the admission of the testimony of Dr. Thorson, a graduate of an eclectic school of medicine. The record does not disclose whether this is a distinct school of medicine, but it seems clear that the witness was recognized as outside the allopathic school of medicine. In order to show a qualification to testify, Dr. Thorson said he knew the practice of allopathic doctors in childbirth cases. When asked how he knew, he said that in the medical school from which he graduated one of the textbooks used was King's *Obstetrics*, which is allopathic. He stated that he did not know of any difference in the treatment of these cases between his method and the school of allopathy. Upon this showing the doctor was erroneously permitted to testify. The rule is that a physician's professional standard of conduct and the necessities and proprieties thereof are to be tested by the evidence of those who are trained

and skilled in his particular school of medicine. *Nelson* v. *Dahl,* 174 Minn 574 (219 NW 941); *Martin* v. *Courtney,* 87 Minn 197 (91 NW 487); *Harju* v. *Allen,* 146 Minn 23 (177 NW 1015). The fact that Dr. Thorson studied one single allopathic textbook, which may or may not cover the entire field of childbirth and surgical operations incidental thereto, is insufficient. Whether such book is all-inclusive is for a member of the allopathic school to state. Here none has spoken. The fact that the witness of one school does not know any difference in the treatments of the 2 schools is meaningless."

The language quoted is particularly in point in the case at bar because of plaintiff's claim that the testimony of her principal witness should be held sufficient to establish that the methods and standards of practice of osteopathic practitioners, in a case of the character here involved, were the same as those of the school to which he belonged. However, a consideration of all the testimony of the witness in question leads to the conclusion that the claim made is not tenable. In view of the repeated statements that he had no knowledge of osteopathy or the methods and standards of practice generally of osteopathic practitioners, the conclusion necessarily follows that he was not competent to testify whether the defendants exercised due and proper care, according to the applicable test, in treating Mr. Bryant's ailment and in performing the operation. Obviously the standards of practice which the witness indicated should be followed in such a case were those of his own school and which his own study and experience had persuaded him were correct. In giving his testimony he was not speaking from the standpoint of osteopathic schools or practitioners, nor was he in position to do so.

We are not here concerned with the duty of a practitioner of any school for the treatment, cure,

and alleviation of human ailments to exercise due and proper care in making a diagnosis. No claim is made that defendants did not correctly diagnose the cause of the patient's condition. Plaintiff's cause of action rests primarily on the theory that defendants did not follow, in preparing the patient for the operation and in treating him thereafter, the methods customarily taught in osteopathic schools and applied by ordinary practitioners of such schools in their practice in the same community or in similar communities. Under the situation here presented plaintiff's claims could not be established other than by the testimony of an expert or experts possessing the requisite knowledge as to proper care and skill with reference to such matters according to the teachings of osteopathic schools, and the methods customarily employed by osteopathic practitioners, as suggested by the applicable test.

The case of *Cook* v. *Moats,* 121 Neb 769 (238 NW 529, 78 ALR 694), is typical of the decisions holding that where the question at issue is the failure to exercise due care in the making of a diagnosis an expert belonging to one school may be competent to testify in an action brought against a practitioner of a different school. For the reasons above stated, it and similar decisions are not in point in the instant controversy. However, *Cook* v. *Moats* is reported in 78 ALR 694 where it is followed by a somewhat extended note citing decisions from various States. The general rule is there stated substantially as set forth in the above quotations from Corpus Juris and American Jurisprudence. The great weight of authority is in accord with the principle recognized by this Court in *Janssen* v. *Mulder, supra.*

In view of the facts and issues involved in the case, the testimony of plaintiff's principal witness was not competent for the purpose for which it was

offered. Other questions raised by counsel do not require discussion. The motions for directed verdicts were properly granted, and the judgment is affirmed, with costs to defendants.

Reid, C. J., and Boyles, North, Dethmers, Butzel, Bushnell, and Sharpe, JJ., concurred.