Ruth E. BRANDON, Plaintiff-Appellant,

v.

ART CENTRE HOSPITAL (OSTEO-PATHIC), a Michigan corporation, and W. M. Radebaugh, individually and jointly, Defendants-Appellees.

No. 16292.

United States Court of Appeals Sixth Circuit.

Sept. 21, 1966.

Saul M. Leach, Detroit, Mich. (Maile, Leach & Silver, Judson L. Levin, Detroit, Mich., on the brief), for appellant.

John D. Hayes, Detroit, Mich. (Ward, Plunkett, Cooney, Rutt & Peacock, Thomas A. Neenan, Detroit, Mich., on the brief), for appellee W. M. Radebaugh.

Jack R. Sullivan, Detroit, Mich. (Feikens, Dice, Sweeney & Sullivan, Detroit, Mich., on the brief), for appellee Art Centre Hospital.

Before EDWARDS, Circuit Judge, McALLISTER, Senior Circuit Judge, and KENT, District Judge*.

KENT, District Judge.

This is an action for damages for alleged malpractice on the part of the appellee, W. M. Radebaugh, an osteopathic physician, and for claimed negligence on the part of the Art Centre Hospital (Osteopathic).

Plaintiff-appellant (hereinafter referred to as plaintiff) entered the defendant hospital on July 18, 1962. Defendant Radebaugh was engaged to treat and care for the plaintiff. Subsequently plaintiff was discharged from the defendant hospital on order of the defendant Radebaugh, apparently at her own request. Thereafter she was admitted to another hospital where she was treated. It is claimed by the plaintiff that defendant, Dr. Radebaugh, erred in his diagnosis of the plaintiff's condition and that the defendant hospital negligently failed to provide proper care, and failed to provide or obtain qualified doctors and personnel. Essentially, plaintiff's claim is that there was an error in diagnosis for which both doctor and hospital were responsible.

Judgment was entered for the defendants on order of the court at the end of the plaintiff's proofs. The motion for new trial as to both defendants was denied.

During the course of the trial plaintiff offered the testimony of a medical doctor to support her claim of malpractice on the part of the defendant, Dr. Radebaugh. Never at any time did the medical doctor testify that he was familiar with the standard of care for osteopathic physicians in the community. Efforts on the part of plaintiff's counsel to obtain an opinion from the medical doctor relative to the care given to the plaintiff by the defendant, Dr. Radebaugh, were unavailing over the objection of counsel for the defendants.

On objection plaintiff's counsel was prevented from cross examining the Chairman of the Department of Medicine of the defendant hospital, who was an independent practicing osteopathic physician and surgeon in the City of Detroit, holding the position of Chairman of the Department of Medicine outside the control of the defendant hospital. It is the theory and claim of the plaintiff's counsel that he should have been permitted to utilize the testimony of a medical doctor to evaluate the standard of care of an osteopathic physician, and that he was entitled to cross examine the Chairman of the Department of Medicine of the defendant hospital under Rule 43(b) F.R. Civ.P., 28 U.S.C.

During the course of the trial no testimony was received from any osteopathic physician and surgeon to establish that the care given the plaintiff by the defendant, Dr. Radebaugh, was not in accordance with the standard of care for osteopathic physicians in the community, and no testimony was offered to establish any duty on the part of the defendant

---

* Honorable W. Wallace Kent, United States District Judge for the Western District of Michigan, sitting by designation.

hospital to secure a doctor for the plaintiff. No testimony was offered to show a duty on the part of the defendant hospital to review the nature of the care rendered to the plaintiff by her attending physician.

Plaintiff called the Chairman of the Department of Medicine of the defendant hospital for cross examination under the provisions of Rule 43(b) F.R.C.P., 28 U.S.C.: " * * * [a] party may call * * * an officer, director or managing agent of a public or private corporation * * * which is an adverse party, and interrogate him by leading questions * * * ." Counsel for the defendant hospital objected to cross examination of the Chairman of the Department of Medicine of the defendant hospital on the ground that he was not "a managing agent" within the meaning of Rule 43(b). The objection was sustained.

It appears from the evidence that the Chairman of the Department of Medicine was an independent practicing osteopathic physician and surgeon in the City of Detroit, that the position of Chairman of the Department of Medicine was in a sense honorary, that the "position" was not a paid position, that he had no authority to employ or terminate employment, that he had no authority to interfere with the performance of the employees of the staff of the hospital, that his authority in connection with the hospital was basically the same as that of every other osteopathic physician and surgeon who was a member of the staff of the defendant hospital. It appears from the record that the position of Chairman of the Department of Medicine was a recognition of the training, experience and ability of the person holding that position, that it was entirely outside the echelon of management of the hospital.

The determination of the issues presented by this case must be in accordance with the laws of the State of Michigan, Erie Railroad Co. v. Thompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. Under Michigan law, "the implied contract between a patient and surgeon requires the latter to use the degree of diligence and skill ordinarily exercised by the average of the members of the profession in the same locality or similar localities, with due consideration to the state of the profession at the time." Bryant v. Briggs, 331 Mich. 64, 70, 49 N.W. 2d 63, 67. In Bryant v. Briggs, supra, the Supreme Court of Michigan was presented with a case with issues almost exactly like those in the instant case. The medical doctor was used to testify in regard to the proper care of a patient who had been treated by an osteopathic physician. The medical doctor did not at any time express any knowledge with reference to osteopathy, or the degree of care and skill customarily followed and exercised by osteopathic practitioners in the community or similar communities. The Supreme Court of Michigan in disposing of the issue stated at page 77 of 331 Mich. at page 69 of 49 N.W.2d.

"Under the situation here presented plaintiff's claims could not be established other than by the testimony of an expert or experts possessing the requisite knowledge as to proper care and skill with reference to such matters according to the teachings of osteopathic schools, and the methods customarily employed by osteopathic practitioners, as suggested by the applicable test."

Under the laws of the State of Michigan expert testimony is an absolute prerequisite to the plaintiff's right to recover from each of the defendants in this case. As stated in Lince v. Monson, 363 Mich. 135, 139, 108 N.W.2d 845, 847:

"In the ordinary negligence case a question is presented whether an ordinary, careful and prudent person would have done as defendant did under the circumstances. Presumably a jury of 12 persons, drawn from and representing a cross section of the community, is competent to judge that question, on the basis of its own knowledge and experience, and to determine negligence or freedom therefrom accordingly. Sometimes, in such cases, a problem presented is whether the

question of defendant's negligence is one of fact for the jury or of law to be decided by the court. That is not the problem here. Rather, it must be determined in this case whether it is competent for a jury of laymen to decide a question concerning professional practice and to make a finding of malpractice without benefit of professional testimony to support it. In a case involving professional service the ordinary layman is not equipped by common knowledge and experience to judge of the skill and competence of that service and determine whether it squares with the standard of such professional practice in the community. For that, the aid of expert testimony from those learned in the profession involved is required. As this Court said in Zoterell v. Repp, 187 Mich. 319, 330, 153 N.W. 692, 696:

'As to those matters of special knowledge strictly involving professional skill and attention, unskillfulness, negligence, or failure to do that which ought to be done must be shown by the testimony of those learned in such matters.' "

The rule relating to professional care and whether or not the standards of such care have been met would apply with equal force to the defendant hospital as to the defendant doctor.

"Exceptions to that rule are to be found in cases where the lack of professional care is so manifest that it would be within the common knowledge and experience of the ordinary layman that the conduct was careless and not conformable to the standards of professional practice and care employed in the community." Lince v. Monson, 363 Mich. 135, 141, 108 N.W.2d 845, 848.

and see also Skeffington v. Bradley, 366 Mich. 552, 115 N.W.2d 303. Michigan has applied the same rule in Wrobel v. Cotman, 372 Mich. 383, 126 N.W.2d 723.

■ In sustaining the objection of defendants' counsel to the cross examination of the Chairman of the Department of Medicine of the defendant hospital un-

der the provisions of Rule 43(b) F.R.C. P., 28 U.S.C., the trial judge in part relied upon Newark Insurance Company v. Sartain, 20 F.R.D. 583, at page 586, D.C.Cal. 1957, where that Court said:

"In the final analysis, the cited cases have reached the conclusion that a managing agent of a corporation, partnership or association is any person who:

1. Acts with superior authority and is invested with general powers to exercise his judgment and discretion in dealing with his principal's affairs (as distinguished from a common employee, who does only what he is told to do; has no discretion about what he can or cannot do; and is responsible to an immediate superior who has control over his acts) ;

2. Can be depended upon to carry out his principal's directions to give testimony at the demand of a party engaged in litigation with his principals; and

3. Can be expected to identify himself with the interests of his principal rather than those of the other party."

■ We recognize no better way to express the test required by Rule 43(b). Application of this test to the Chairman of the Department of Medicine makes it obvious that he does not meet the test. He was not an employee of the defendant hospital; he did not have general powers to exercise his judgment and discretion in dealing with his principal's affairs, and he was not responsible to an immediate superior who had control over his acts. He certainly could not be expected to identify himself with the interests of his principal rather than those of the other party, if the other party was a licensed osteopathic physician on the staff of the hospital with whose opinion he agreed. In other words, his first obligation was to his profession, he was not a managing agent within the meaning of Rule 43(b), and, therefore, not subject to cross examination by plaintiff's counsel.

Upon the entire record this Court is satisfied that the trial court was correct in its rulings relating to the admission of testimony. This Court is satisfied that upon the record as presented at the conclusion of the plaintiff's proofs there were no issues of fact presented by the evidence to be resolved by the jury. The trial court properly directed a verdict for the defendants in accordance with the provisions of Rule 50(a) F.R.C.P., 28 U.S.C.

Affirmed.