FRAZIER *v.* HURD.

DECISION OF THE COURT.

1. APPEAL AND ERROR—WITNESSES—MALPRACTICE—OSTEOPATH—AL-
LOPATH—CROSS-EXAMINATION.

Order of Court of Appeals reversing directed verdict and judg-
ment for defendant osteopath in malpractice action arising
from performance of an oophorectomy is affirmed on plaintiff's
appeal to Supreme Court limited to determination of question
as to whether trial court committed reversible error in excluding
plaintiff's examination of allopath physician and surgeon as an
expert.

SEPARATE OPINION.

SOURIS, ADAMS, and BRENNAN, JJ.

2. WITNESSES — PHYSICIANS AND SURGEONS — MALPRACTICE — ALLO-
PATH — OSTEOPATH — OOPHORECTOMY.

*Circuit judge's refusal, in a malpractice action against an osteo-
path, to permit plaintiff to introduce testimony of an allo-
pathic physician relating to the surgical procedures performed
by defendant osteopath in the performance of oophorectomy
was proper, where the allopathic physician had already ad-
mitted on cross-examination, and without qualification, his un-
familiarity with osteophathic standards.*

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 6, 8] 41 Am Jur, Physicians and Surgeons § 130.
Competency of physician or surgeon of school of practice other
than that to which defendant belongs to testify in malpractice
case. 85 ALR2d 1022.
[4, 8] 3 Am Jur 2d, Agency § 353; 41 Am Jur, Physicians and
Surgeons § 114.
[5] 3 Am Jur 2d, Agency § 353.
[7] 5 Am Jur 2d, Appeal and Error § 760.
[9] 30 Am Jur 2d, Evidence §§ 1082, 1083, 1087; 58 Am Jur, Wit-
nesses § 574.

3. SAME—OPINION TESTIMONY—MALPRACTICE—DIFFERENT SCHOOLS OF HEALING.

*Opinion testimony of a witness knowledgeable on the subject of the standards applicable to defendant's profession and concerning defendant's compliance or noncompliance with those standards, is admissible in a malpractice case notwithstanding the witness does not practice the same profession or belong to the same school of healing as does defendant.*

DISSENTING OPINION.

DETHMERS, C. J., and O'HARA, J.

4. PRINCIPAL AND AGENT—PHYSICIANS AND SURGEONS—EVIDENCE.

*An osteopathic physician who assisted another osteopath in performing an oophorectomy was not an agent within the meaning of the adverse party statute, where the only testimony tending to show agency was a nonresponsive answer by the claimed agent to a question not directed at the issue of agency at all, long after the trial judge had ruled that the witness was not an adverse party (CLS 1961, § 600.2161).*

5. SAME—TESTIMONY.

*Testimony of an agent is admissible as bearing on the relationship of principal and agent, but the declaration of an agent alone is not competent to establish the agency.*

6. WITNESSES—EXPERT WITNESS—PHYSICIANS AND SURGEONS—MALPRACTCICE.

*Medical doctor, called as an expert witness to give opinion evidence in oophorectomy malpractice case as to whether the defendant osteopath complied with the approved surgical procedures and the prescribed standards of osteopathy, could not testify, where he disqualified himself as a competent witness by emphatically denying any knowledge whatsoever of the procedures of osteopathic surgeons or of osteopathic standards.*

7. COURTS—PRINCIPLE OF LAW.

*Supreme Court prefers not to enunciate a principle of law of broad application outside a factual context that will support it.*

SEPARATE OPINION.

KELLY and BLACK, JJ.

8. WITNESSES—ASSISTING SURGEON AS AGENT OF DEFENDANT—CROSS-EXAMINATION.

*Refusal of trial court to permit plaintiff in surgical malpractice case to call osteopathic physician, who had assisted defendant*

osteopath in performance of surgical operation, as witness for cross-examination under statute permitting opposite party's agent to be so called, was error, because assisting physician was agent of defendant who had power to control him in performance of operation (CLS 1961, § 600.2161).

9. SAME—TESTIMONY—ALTERATION.

Every witness is entitled to explain, change, alter, or contradict testimony previously given by him.

Appeal from Court of Appeals, Division 1; Lesinski, C. J., J. H. Gillis and Holbrook, JJ., reversing Wayne, Burdick (Benjamin D.), J. Submitted January 10, 1968. (Calendar No. 5, Docket No. 51,746.) Decided April 1, 1968.

6 Mich App 317, affirmed.

Declaration by Frances Frazier against Douglas B. Hurd for malpractice in performance of surgery. Directed verdict and judgment for defendant. Plaintiff appealed to Court of Appeals. Reversed and remanded for new trial. Plaintiff appeals on question as to admissibility of testimony, answered adversely to her by Court of Appeals. Court of Appeals affirmed.

*Nat Gursten,* for plaintiff.

*Feikens, Dice, Sweeney & Sullivan,* for defendant.

SOURIS, J. This is a malpractice action against an osteopath. At conclusion of plaintiff's proofs, the circuit judge directed a verdict of no cause of action. The Court of Appeals found error in the circuit judge's ruling prohibiting plaintiff's counsel from calling for cross-examination, under the statute cited

in the margin,[1] an osteopath who assisted defendant in the surgical procedure out of which this action arises. It reversed for new trial. 6 Mich App 317. One other issue considered by the Court of Appeals, as to which it found no error, involved the circuit judge's refusal to permit plaintiff to introduce testimony of an allopathic physician relating to the surgical procedures performed by defendant osteopath. On plaintiff's application to this Court, we granted her leave to appeal so that we might review the Court of Appeals' ruling on this latter issue. 379 Mich 765.

Defendant performed surgery upon plaintiff for removal of her right ovary. During the surgery, plaintiff's right ureter was cut transversely while defendant was attempting to dissect the ovary from the ureter to which it had adhered. Defendant inserted a catheter into the opening in the ureter and then closed the opening with sutures. Defendant's "operative report", admitted in evidence as an exhibit, discloses that defendant had intended to leave a Penrose drain in place over the site of the ureteral repair, but "overlooked" doing so until the wound was completely closed.[2] Considering the repair of the ureter to be unusually secure, the defendant decided against reopening the abdomen to insert the drain. However, it was then discovered, by observation through a cystoscope passed into the bladder from the external genitalia, that the peristaltic action of the right ureter was expelling the catheter from the ureter. Thereupon, the catheter was removed with forceps, a Foley catheter was placed in the urinary bladder and the patient was returned to her

---

[1] CLS 1961, § 600.2161 (Stat Ann 1962 Rev § 27A.2161).
[2] Plaintiff did not preserve for appellate review the question whether the defendant's "operative report" contained evidence of negligence sufficient in itself to take that issue to the jury. Accordingly, we express no opinion thereon.

hospital bed. Complications developed the following day resulting from a blockage of the ureter. On the second day after the surgery performed by defendant, an osteopathic specialist in urology operated upon plaintiff to repair the blocked ureter.

At trial, plaintiff called Dr. Clarence Youngstrom, an allopathic physician. During cross-examination on his qualification to testify as an expert witness in this case, Dr. Youngstrom stated that he knew nothing of the standards, procedures and techniques of osteopathic physicians. On redirect examination, plaintiff's counsel asked him whether he was familiar with the standards or skill applied by osteopaths in performing operations such as was performed upon plaintiff. The circuit judge sustained defense counsel's timely objection to the question on the basis of Dr. Youngstrom's prior admissions that he was unfamiliar with osteopathic standards. Plaintiff's counsel did not pursue that question further but, instead, asked the witness whether he had read the defendant's "operative report". Following an affirmative response by the witness to that question, defense counsel objected on the ground of materiality and the objection was sustained.

The colloquy between the circuit judge and counsel for the parties which then followed revolved not around the court's last ruling but, rather, the ruling which preceded. Plaintiff's counsel insisted that, notwithstanding his witness' prior admissions that he was unfamiliar with osteopathic standards, he should have been allowed to testify whether he was familiar with the standards or skill applied by osteopaths in removing ovaries. In the jury's absence plaintiff's counsel on three occasions stated, in general terms only, what evidence he expected to elicit from Dr. Youngstrom:

"*Mr. Gursten:* The statement I want to make for the record, and as it was understood right from the beginning,. was that I was going to have a medical surgeon testify that the techniques, methods and details of an oophorectomy for an osteopathic school and the medical school are precisely the same. * * *

"*Mr. Gursten:* I would like to put on the record now, that I intended to prove with this witness is the fact that the standards of the osteopathic surgeons and the medical surgeons were the same as it concerns oophorectomies. * * *

"*Mr. Gursten:* He would say that the method and technique of the osteopathic school of medicine and the medical school of medicine in the performance of an oophorectomy are precisely the same."

' Dr. Youngstrom, having already admitted on cross-examination and without qualification his unfamiliarity with osteopathic standards, could not thereafter be permitted on redirect to contradict his cross-examination testimony, even in part, in the face of defense counsel's timely objection. It was not reversible error for the circuit judge to sustain the objection.

Thus thwarted, plaintiff's counsel was unable to invoke an evidentiary exception to what he regards as the general rule concerning opinion testimony in malpractice cases. It seems to be his belief, a belief apparently shared by the Court of Appeals,[3] that the general rule prohibits opinion testimony from a practitioner of one school of medicine regarding a defendant's failure of compliance with the standards of another school solely because the witness is not a practitioner of the school of medicine whose standards are in issue. From this premise, plaintiff's

[3] "In light of the increased similarity between osteopathic and medical procedures and in view of their mergers in some jurisdictions, this Court finds it difficult to subscribe to [*Bryant* v. *Biggs* (1951), 331 Mich 64]. However, we are bound by its holding which effectively defeats plaintiff's claim." 6 Mich App 317, 319.

counsel argues that Michigan should recognize, if
it has not done so already in *Bryant* v. *Biggs* (1951),
331 Mich 64, at 74, an exception to that general rule
when the standards of the two schools relating to
the medical or surgical procedure involved in litiga-
tion are identical.

We do not read our precedents to preclude opinion
testimony of compliance or failure of compliance
with the standards of a defendant's profession except
only from a member of that profession. We never
have addressed our decisional attention to this spe-
cific question.[4] However, it is significant that on a
number of occasions in which we have discussed
opinon testimony in malpractice cases, we have sug-
gested that opinions of one not a practitioner of de-
fendant's profession would have been admissible had
there been a showing that the offered witness had
knowledge of the applicable standards of the defend-
ant's profession. See, for example, *Zoterell* v. *Repp*
(1915), 187 Mich 319, 330; *Sima* v. *Wright* (1934),
268 Mich 352, 356; *Facer* v. *Lewis* (1950), 326 Mich
702, 713, 714; and *Pedler* v. *Emmerson* (1951), 331
Mich 78.

It is true that other opinions of this Court sustain
exclusion of opinion testimony in language so broad
that it lends some credence to the claim that only a
witness who practices defendant's profession may
give opinion testimony in a malpractice case. But,
in none of those opinions is it suggested that the
witness, not a practitioner of defendant's profession,
whose opinion testimony was excluded was knowl-

---

[4] Other courts have. The conclusions reached are not uniform.
Some courts restrict opinion witnesses to practitioners of the same
school as defendant. Others focus attention, instead, upon the witness'
asserted knowledge of the standards applicable to defendant's pro-
fession. Still others admit opinions from nonpractitioners of de-
fendant's profession, but who are knowledgeable about its standards,
as an exception to the more limited general rule. The cases are as-
sembled in 85 ALR2d 1022.

edgeable about that profession's standards legally pertinent to the case. Perhaps understandably, a time-pressured Court tends to refer in its opinions only to those facts which are essential to the decision of the case at bar, leaving for another day and another case consideration of factors which might modify the decisional rule. Sometimes, indeed, decision is stated only in terms of the facts of the decided case while acknowledging tacitly that the rule of law applied is broader than required to be stated by the facts of the case being decided. Thus, in *Janssen* v. *Mulder* (1925), 232 Mich 183, at 190, this Court stated its decision in the following language: "It necessarily follows that such proof must be made by one engaged in treatment by similar methods to those employed by defendant." However, at page 191, the Court cited a number of decisions from other States and said about them that "the conclusions reached were in harmony with the views we have expressed."

Among the cases cited in *Janssen* are *Martin* v. *Courtney* (1899), 75 Minn 255 (77 NW 813); and *Berkholz* v. *Benepe* (1922), 153 Minn 335 (190 NW 800). In *Martin* and in *Berkholz,* the Minnesota supreme court considered the issue we now address and concluded that the knowledge possessed by the witness about the standards applicable to defendant's profession, not simply the profession the witness practices or the school of healing he attended, is the significant factor in determining his qualification to express an expert's opinion regarding defendant's compliance or failure to comply with the standards of defendant's own profession.

The most thoughtful consideration of the problem we have been able to find is *Swanson* v. *Hood* (1918), 99 Wash 506 (170 P 135), which relies in part upon *Martin, supra.* In *Swanson,* the Washington supreme court had this to say on the subject:

"Finally in this connection, it is contended that the deposition was inadmissible because the witness was an osteopath, whereas appellant belongs to the allopathic school. Appellant takes the broad position that a physician of one school is not competent to testify in a suit for malpractice or negligence of a physician of another school. Several decisions are cited which it is claimed support this view, but as we read them they hardly go that far. The rule is not that a physician of another school is not competent to testify, but that a defendant's treatment is to be tested by the general doctrine of his own school, which is a very different thing. In other words, the standard of exclusion of evidence is not the school of the witness but the premises of his testimony. If the premises from which he testifies, that is to say, the criterions by which he measures defendant's treatment, are those of defendant's own school, the witness is not disqualified merely because he himself belongs to another school. *Bowman* v. *Woods,* 1 G. Greene (Iowa) 441; *Force* v. *Gregory,* 63 Conn 167 (27 A 1116, 22 LRA 343, 38 Am St Rep 371); *Martin* v. *Courtney,* 75 Minn 255 (77 NW 813); *Patten* v. *Wiggin,* 51 Me 594 (81 Am Dec 593); *Grainger* v. *Still,* 187 Mo 197 (85 SW 1114, 70 LRA 49).

"In qualifying, the witness McFadden stated he had studied operative surgery in college and that he had studied certain works of the late Dr. John B. Murphy, of Chicago, a recognized authority on operative surgery. Appellant himself admitted that Dr. Murphy was one of the foremost authorities on operative surgery in the world. The witness also testified that he had studied certain English works treating specifically of the Lane plate method. Clearly the basis or criterion by which the witness measured appellant's use of this method was that of appellant's own school. The distinction which we have attempted to make was covered by an instruction of the trial court as follows:

" 'In this connection you are also instructed that if you find that there is more than one branch or school of physicians and surgeons which applies or uses different methods in the treatment of bone fractures, to one of which schools the defendant belongs, he is only expected to follow the method ordinarily followed by the school to which he belongs and the question of his skillfulness, carelessness, or negligence is not to be governed by the beliefs or practices of any other school of physicians or surgeons.'

"As limited by this instruction, the testimony of the witness, though an osteopath, was clearly competent.

"Nor are we impressed with the claim that this witness was disqualified because he had no right to practice the allopathic system and has only a theoretical knowledge of that system. So long as the opinion of the medical expert is his own it is admissible, though it be based on the study of books rather than on his own experience. Jones on Evidence (2d ed), § 368; *People* v. *Phelan,* 123 Cal 551 (56 P 424); *Finnegan* v. *Fall River Gas Works Co.,* 159 Mass 311 (34 NE 523); *Hardiman* v. *Brown,* 162 Mass 585 (39 NE 192); *People* v. *Thacker,* 108 Mich 652. Even a nurse is competent to testify as an expert from her own observation as to whether a given operation was performed in the usual manner and with the usual care. In fact, in this case, appellant himself called the nurse to negative respondent's charge of surgical uncleanliness and excessive force and to say that appellant used no greater force than the usual skilled manipulation of a surgeon. Such evidence is competent; its weight is for the jury. So here, when it once appeared that the osteopathic physician was basing his testimony on the tenets of appellant's own school, his testimony was admissible; its weight was for the jury. The admission of this testimony then became largely a matter for the discretion of the trial court, as in other cases of expert testimony." 99 Wash 506, at 514–516.

The reasoning of the Washington court in *Swanson* is persuasive to us, is not contrary to any of our prior decisions, and is consistent with statements contained in some of our opinions seemingly recognizing the rule stated in *Swanson*. Accordingly, it is our conclusion that in malpractice cases the opinion testimony of a witness, knowledgeable on the subject of the standards applicable to defendant's profession and concerning defendant's compliance or noncompliance with those standards, is admissible notwithstanding the witness does not practice the same profession or belong to the same school of healing as does defendant.

Having so concluded, however, does not help this plaintiff. Her witness, Dr. Youngstrom, an allopathic physician, expressly denied any knowledge of the standards applicable to osteopathy, defendant's profession. Thus, he was disqualified from testifying as an expert, under the general rule, whether defendant complied with those osteopathic standards by which the law must determine the issue of his asserted negligence.

Nor do we believe Dr. Youngstrom's testimony was admissible under the "exception" to which plaintiff refers. The "exception" is described in this Court's quotation, in *Bryant* v. *Biggs, supra,* at page 74, from 41 Am Jur, Physicians and Surgeons, § 130, p 243, as follows:

" 'This rule does not, however, exclude the testimony of physicians of other schools or experts in other lines when that testimony bears on a point as to which the principles of the two schools concur, such as matters of diagnosis, the methods and dangers of the use of X-ray or other electric or mechanical appliances in common use by the several schools, or the existence of a condition that should be recognized by any physician of any school. There is authority, however, which emphasizes the point

that the tenets and standards of treatment which form the premises for the testimony must be so substantially the same on the point in issue as to afford a true test.' "

Dr. Youngstrom's cross-examination admissions effectively precluded, defendant's timely objection considered, his subsequent claim of expert knowledge regarding any osteopathic standards and principles, as we have noted. Thus, absent any other evidence of such osteopathic standards and principles in the record presented on this appeal for our review, there was no possible evidentiary basis for Dr. Youngstrom to testify, as plaintiff's counsel said he was prepared to do, that the standards of allopathy and osteopathy for removal of ovaries were identical. In short, this record does not permit our ruling that the circuit judge should have allowed Dr. Youngstrom's offered testimony either under the general rule as above stated or as an exception to the general rule.

The Court of Appeals' judgment of reversal and remand for new trial is affirmed for the reasons stated. Costs may be taxed by defendant.

Adams and Brennan, JJ., concurred with Souris, J. T. M. Kavanagh, J., concurred in the result.

O'Hara, J. (*dissenting*). I disagree with the disposition of this case proposed by Mr. Justice Souris. I would not ordinarily reach decisionally the question upon which the Court of Appeals reversed and remanded for a new trial because it was not appealed to this Court by the defendant. Since Justice Souris writes to remand for a new trial, I feel obligated to express myself on the issue upon which remand was based because it may well arise upon a new trial, if granted.

Plaintiff in this malpractice action professionally consulted Dr. Douglas B. Hurd, an osteopathic physician. According to the Court of Appeals' opinion, plaintiff was "referred" to Dr. Hurd by another osteopath, Dr. Klucka. Dr. Hurd performed surgery, allegedly "assisted" by Dr. Klucka. It is important to note that plaintiff, in the first instance, consulted and engaged Dr. Klucka. It was Dr. Klucka who selected Dr. Hurd and referred his patient to him. Under this statement of facts, as stated by the Court of Appeals, at trial in an action by the patient against the operating osteopath, Dr. Hurd, the patient, as plaintiff, attempted to call Dr. Klucka adversely as an agent of Dr. Hurd. The trial judge held Dr. Klucka was not an agent within the meaning of the adverse party statute. In my view he was right.

The only possible testimony which could have been relied upon by the Court of Appeals to make Dr. Klucka the agent of the defendant for the purpose of the statute is this question asked of Dr. Klucka and his answer thereto:

"*Q.* Did you have an opportunity to observe Dr. Hurd as he was performing the operation on Mrs. Frazier?

"*A.* For the most part I have observed most of the operation, but my vision wasn't as clear as his. I was merely his assistant in holding the [re]tractors."

It is important to note that by this point in the trial, the trial judge had long since ruled as a matter of law that Dr. Klucka could not be called and examined adversely. The following took place when plaintiff called Dr. Klucka to the stand in the ordinary manner:

"*Mr. Gursten:* Incidentally, for the record, I am calling Dr. Klucka as an adverse witness under cross-examination, under the statute.

"*Mr. Dice:* I object to that. He is not a party to this suit.

"*The Court:* Well I sustain the objection, and I ask that be stricken. I think that remark was improper. You have a witness called by you and as to what transpires hereafter, this was an unfair thing for you to say. This is your witness and you called him. Is this correct?

"*Mr. Gursten:* Under the statute for cross-examination.

"*The Court:* Under what statute? He isn't a party to this case. You can't call him under the statute for cross-examination.

"*Mr. Gursten:* I intend to show he was an agent.

"*Mr. Dice:* I object.

"*The Court:* This is very improper. If you are going to try to indicate—if you are trying to establish him as an adverse witness, then you may only do so by examination. At this point he is your witness and you are bound by his testimony as of now."

After excusing the jury an extended colloquy between court and counsel took place. Finally the trial judge ruled:

"[*The Court*]: What you established throughout the entire testimony is that this Dr. Klucka is a doctor or physician attending your client for many years, and it was Dr. Klucka who suggested, or asked, or retained, or whatever else he did, that Dr. Hurd perform the operation. It is just the reverse of what you say. * * *

"[*The Court*]: I rule he is not an adverse witness in accordance with your citation."

The question which elicited the response "I was merely his assistant in holding the [re]tractors" was not directed to the question of agency at

all. It was concerned with the manner in which the ureter was damaged during the operation and whether Dr. Klucka had observed how this occurred. The quoted part of the reply was a nonresponsive, gratuitous, or volunteered statement. It is fundamental that while the testimony of an agent is admissible as bearing on the relationship of principal and agent, the declaration of an agent alone is not competent to establish the agency. (See 1 Callaghan's Michigan Digest, Agency, § 13, p 167 for collected cases.)

The foregoing unsupported statement falls far short of the requirement, even to make a submissible jury issue of the question of agency, let alone establishing it so as to enable plaintiff to call the witness adversely and cross-examine him under the statute. There was an insufficient showing that Dr. Klucka was an agent of Dr. Hurd.

I do not read *Barnes* v. *Mitchell,* 341 Mich 7, as authority for reversal of the trial judge. In *Barnes, supra,* a nurse employed by the defendant chiropractor in his clinic negligently overexposed plaintiff to X rays. I find the case as cited by the Court of Appeals inapposite and inapplicable. As earlier indicated in the case at bar, on appeal from the Court of Appeals by plaintiff, no cross-appeal was taken on this point by defendant. However, since Justice SOURIS' opinion affirms the Court of Appeals, I want to make completely clear that I do not approve the ground assigned by the Court of Appeals for reversal of the trial judge.

The second issue considered by the Court of Appeals was of the right of an M.D. called as an expert witness by plaintiff to give opinion evidence as to whether the defendant osteopath complied with the approved surgical procedures and the prescribed standards of osteopathy.

The Court of Appeals expressed difficulty in subscribing to *Bryant* v. *Biggs,* 331 Mich 64. That Court appears to have accepted *Bryant* as holding that an M.D. could, under no circumstances, give opinion evidence in a malpractice case against an osteopathic surgeon.

We believe the intermediate court either misconstrued *Bryant* in its application to the case at bar, or misunderstood the basis upon which the trial judge excluded the M.D.'s opinion evidence. Reference to the trial transcript clearly establishes that the circuit judge did not do so by reason of any requirement in *Bryant.* Neither did he hold that the proposed opinion evidence did not come within any exception to the *Bryant* rule. He held that this particular M.D. disqualified himself as a competent witness. We quote the trial transcript:

"*Mr. Gursten* [*plaintiff's counsel*]: We are now confronted with the situation that in the beginning of the case, there was discussion before this bench, which involved the plaintiff's theory, which was that the plaintiff would prove an exception to the general rule, that general rule being that a practitioner of one school is entitled to be charged* by practitioners of the same school. There was no question about that being the general rule.

"*The Court:* I am familiar with what you are saying. Where the M.D. and the other schools do the same kind of things, the standards are the same, et cetera.   *   *   *

"*Mr. Gursten:* The statement I want to make for the record, and as it was understood right from the beginning, was that I was going to have a medical surgeon testify that the techniques, methods and details of an oophorectomy for an osteopathic school and the medical school are precisely the same.

---

* We assume the word "charged" is an error in transcription.

*"The Court:* You made no deal with me about anything. You said it came within the exception. You were going to prove it. You have failed to establish it. There was no deal with you. The law is either with you or against you. You have failed to establish that with this witness to this point.

*"Mr. Gursten:* That is correct.

*"The Court:* All right.

*"Mr. Gursten:* The court understands—

*"The Court (interposing):* If he doesn't know the standards, how can he testify it is the same? Unless he is going to change his mind. That is what I cannot understand. He said, 'I am not familiar with the standards.' Now, you are going to say he is familiar with the same standards?

*"Mr. Gursten:* If he were permitted to testify— the question asked him—whether he is familiar with the standards as it relates to oophorectomies only. He was speaking generally before.

*"The Court:* Well, then, this is most implausible, counsel. Here you say, generally he doesn't know, but specifically he does know. It just doesn't make sense.  *  *  *

*"Mr. Gursten:* Now, I have asked the court for permission to put into the record what I intended to prove by this witness, and—

*"The Court (interposing):* You already told me what you intended to prove by this witness and I say you cannot because in view of his answer, he is not able to testify to what you said.

*"Mr. Gursten:* All right. I have not made the offer in detail.

*"The Court:* I don't need it in detail. The offer of proof would be that if he were permitted to testify, you say he would say what?

*"Mr. Gursten:* He would say that the method and technique of the osteopathic school of medicine and the medical school of medicine in the performance of an oophorectomy are precisely the same.

"*The Court:* That would be in direct conflict to the answer given now, therefore, I rule it out.

"*Mr. Dice:* That is right.

"*The Court:* This was an unequivocal answer to a specific question.

"*Mr. Gursten:* The court understands, of course, without this witness that I can have no case.

"*The Court:* You are aware of the fact that I have to call these as I see them. The fact that you are unable to prove by this witness what you thought you could, is not the fault of the court, and perhaps, not the fault of yourself. I think you have done a tremendous job of attempting to prove a case, and as far as I am concerned, I compliment you for your hard work in the matter, but I cannot, in view of what I have heard from the stand just now as to the fact that he is not familiar with the standards nor has he been present during any surgeries, to let any testimony come in which would contradict what he said."

The M.D. emphatically denied any knowledge whatsoever of the procedures of osteopathic surgeons or of osteopathic standards. In view of this unequivocal testimony he effectively disqualified himself as an expert, not by the rule in *Bryant,* or by any exception thereto, but by the rules of evidence relating to expert testimony and opinion evidence that are as old as our case law.

Understandingly, we must disapprove the following language in the Court of Appeals' opinion as used in this case:

"*In light of the increased similarity between osteopathic and medical procedures and in view of their mergers in some jurisdictions, this Court finds it difficult to subscribe to Bryant.*" (Emphasis supplied.) 6 Mich App 317, at p 319.

It was, as above noted, no interdiction of *Bryant* that disqualified the M.D. *Bryant's* decisional essence is as follows (pp 70–72):

"It has been repeatedly held by this Court that the implied contract between a patient and surgeon requires the latter to use the degree of diligence and skill ordinarily exercised by the average of the members of the profession in the same locality or in similar localities, with due consideration to the state of the profession at the time. * * *

"In the instant case the alleged failure of defendants to exercise the requisite degree of care and skill in the treatment of plaintiff's decedent could not be established *other than by the testimony of an expert or experts familiar with the ordinary methods and standards of practice of osteopathic practitioners in the community or in similar communities.* Practitioners of other schools of treatment, no matter how well qualified by study and experience in their own methods and standards but lacking the requisite knowledge of the specific matter in question, could not competently express opinions." (Emphasis supplied.)

Nowhere do we find in *Bryant* an unequivocal holding that a properly qualified M.D. could not testify to the matters sought to be proved by plaintiff. It was not Dr. Youngstrom's M.D. degree that disqualified him, but his emphatically stated lack of any knowledge of osteopathic standards and procedure.

My specific difference with Justice SOURIS is twofold. First, I do not believe we should in this case decisionally expand *Bryant* to encompass the language used by the supreme court of Washington in *Swanson* v. *Hood,* 99 Wash 506 (170 P 135). We prefer not to enunciate a principle of law of broad application outside a factual context that will support it. For our purpose in this case we should expressly disapprove the language in the Court of Appeals'

opinion that the holding in *Bryant* "effectively de-
feats plaintiff's claim." We do so disapprove it.

Second, Justice Souris affirms the order of remand.
I disagree. The order of remand of the Court of
Appeals was based on an error of law and we should
not compound it by affirming the remand for a new
trial.

This lawsuit involved 2 questions. One was a
question of agency; the other a question of the *quali-
fications* of an expert witness. The trial judge ruled
on them both in the factual setting that was before
him on the record. He should be affirmed or reversed
on those 2 rulings. In my view he was right in both.
Under our GCR 1963, 865.1(7), the order of the
Court of Appeals reversing the trial court is vacated.
The directed verdict and judgment for the defendant
entered by the trial judge should be affirmed. Costs
can be taxed by the defendant appellee.

Dethmers, C. J., concurred with O'Hara, J.

Black, J. (*concurring in affirmance*). I agree with
Division 1 (6 Mich App 317, 320) that the trial judge
erred in denying plaintiff the right to cross-examine
Dr. Klucka. When Dr. Klucka was called to the
stand the trial judge and counsel engaged in per-
tinent colloquy:

"*Mr. Gursten* [*plaintiff's counsel*]: Incidentally,
for the record, I am calling Dr. Klucka as an adverse
witness under cross-examination, under the statute.

"*Mr. Dice* [*defendant's counsel*]: I object to that.
He is not a party to this suit.

"*The Court:* Well, I sustain the objection, and I
ask that be stricken. I think that remark was im-
proper. You have a witness called by you and as
to what transpires hereafter, this was an unfair thing
for you to say. This is your witness and you called
him. Is this correct?

"*Mr. Gursten:* Under the statute for cross-examination.

"*The Court:* Under what statute? He isn't a party to this case. You can't call him under the statute for cross-examination.

"*Mr. Gursten:* I intend to show he was an agent.

"*Mr. Dice:* I object.

"*The Court:* This is very improper. If you are going to try to indicate—if you are trying to establish him as an adverse witness, then you may only do so by examination. At this point he is your witness and you are bound by his testimony as of now."

Later on the trial judge ruled:

"[*The Court*]: What you established throughout the entire testimony is that this Dr. Klucka is a doctor or physician attending your client for many years, and it was Dr. Klucka who suggested, or asked, or retained, or whatever else he did, that Dr. Hurd perform the operation. It is just the reverse of what you say. * * *

"[*The Court*]: I rule he is not an adverse witness in accordance with your citation."

The objection of defense counsel should have been overruled. That Dr. Klucka was not a party had no bearing. He was called as a witness who, at the time of the happening of the transaction "out of which the action arose", was an employee or agent of the opposite party, that party being the defendant Hurd. The quoted announcement of plaintiff's counsel was sufficient to justify employment by him of the statute and rule of court (revised judicature act, PA 1961, No 236, § 2161; GCR 1963, 507.4) provided there was some showing of the relationship between defendant and witness which the rule and the statute require. There was such showing.

The record shows that Dr. Klucka was the referring doctor and that defendant Hurd was the surgeon

to whom the referral was made. Having accepted the referral, Dr. Hurd was in charge of the operation. That operation was the "transaction" contemplated by the aforesaid statute and rule. Being thus in charge, he was entitled to engage and supervise such assistance as to him was deemed requisite to the task undertaken. Had he called in say, there being an emergency, some nurse, midwife, overhead rigger, or even a piano mover to hold the forceps or surgeon's hook under his direction, I apprehend no one would deny that the assistant thus called was Dr. Hurd's employee or agent for the purpose of performing the operation.

I perceive no difference under the statute and court rule that Dr. Hurd engaged Dr. Klucka to perform such assistance. Dr. Klucka doubtless would perform better than lay assistance, but that conclusion makes for no new or different legal relationship.

There can be little factual doubt about the status of Dr. Klucka when he was called to the stand. Dr. Hurd's operative report, made immediately after the operation, lists himself as the operating surgeon and Dr. Klucka as his operating assistant. Next Dr. Morgan's operative report, made two days later, lists himself as the operating surgeon, Dr. Klucka as the referring doctor, and Dr. Hurd as his, Dr. Morgan's, operating assistant. These reports alone were amply sufficient to justify the right of cross-examination of Dr. Klucka which plaintiff decided to invoke.

The error referred to was both crucial and prejudicial. When the burden bearer is compelled to make his case or defense in whole or in part by calling adversely interested or hostile witnesses, he should not be restricted in cross-examination when he does make the requisite showing of agency or employment. My vote accordingly is to affirm re-

versal by Division 1, to which I add only the following:

I do not care to commit my signature to any ruling that Dr. Youngstrom was or was not qualified to testify to the opinion plaintiff's counsel expected to obtain from him. I prefer to wait for the doctor's complete testimony before judging the admissibility of such an opinion. Every witness, whether acting mendaciously or honestly, is entitled to the "full liberty of explanation" and the right to change, alter, or contradict testimony previously given by him (*Stoudt* v. *Shepherd* [1889], 73 Mich 588, 592; *Erickson* v. *Milwaukee Lake Shore & W. R. Co.* [1892], 93 Mich 414, 418). The trial judge in this instance should have received the proposed testimony by separate record if, as seems to have been the case, he was of opinion that Dr. Youngstrom had irreversibly committed himself as an incompetent expert witness. For details of what seems to have been hastily improvident judicial action, see the connected transcript appearing in Justice O'HARA's opinion, pp 306–308, *ante.*

As told above, I vote to affirm. Plaintiff should have costs of both appellate courts.

KELLY, J. concurred with BLACK, J.